**Hearing Date: August 27, 2019 at 2:00 p.m. (ET)**
**Objection Deadline: July 8, 2019 at 4:00 p.m. (ET)**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

| | |
|---|---|
| GSCP VI EDGEMARC HOLDINGS, L.L.C., | : |
| GSCP VI PARALLEL EDGEMARC HOLDINGS, | : |
| L.L.C., WSEP AND BRIDGE 2012 EDGEMARC | : |
| HOLDINGS, L.L.C., AND EM HOLDCO LLC, | : |
| | : |
| Plaintiffs, | : Adv. Proc. No. 19-01293 (JLG) |
| | : |
| vs. | : |
| | : |
| ETC NORTHEAST PIPELINE, LLC, | : |
| | : |
| Defendant. | : |
| | : |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**MEMORANDUM OF LAW IN SUPPORT OF ETC NORTHEAST PIPELINE, LLC'S**
**MOTION TO TRANSFER THE ACTION TO THE DISTRICT OF DELAWARE**
**PURSUANT TO 28 U.S.C. § 1412 AND/OR 28 U.S.C. § 1404(a)**

PACHULSKI STANG ZIEHL & JONES LLP
Laura Davis Jones (*pro hac vice* application to be filed)
Beth E. Levine
PACHULSKI STANG ZIEHL & JONES LLP
780 Third Avenue, 34th Floor
New York, NY 10017
Telephone: (212) 561-7700
Facsimile: (212) 561-7777

and

Michael P. Lynn (*pro hac vice* application to be filed)
Chris Patton
John Adams (*pro hac vice* application to be filed)
LYNN PINKER COX & HURST, L.L.P.
2100 Ross Avenue, Suite 2700
Dallas, Texas 75201
Telephone: (214) 981-3800
Facsimile: (214) 981-3839

*Counsel to ETC Northeast Pipeline, LLC*

# TABLE OF CONTENTS

**PAGE**

PRELIMINARY STATEMENT ................................................................................... 1

STATEMENT OF RELEVANT FACTS ................................................................... 1

    A.    The Force Majeure Event ..................................................................... 3

    B.    The Pennsylvania State Court Complaint Against Debtor, EM Energy (PA) ........ 4

    C.    The Equity Owners' New York State Court Complaint Against ETC .................. 5

    D.    The Delaware Bankruptcy Cases ........................................................... 7

ARGUMENT ...................................................................................................... 9

I.    Transfer of the New York State Court Action to the Delaware Bankruptcy Court is Warranted Under 28 U.S.C. § 1412 ...................................................... 9

    A.    The Interests of Justice Mandate Transfer ........................................... 11

        (1)    Transfer Promotes Economic and Efficient Administration of the Bankruptcy Estates ........................................................ 11

        (2)    Transfer Avoids the Risk of Duplicative Litigation and Inconsistent Results ........................................................... 13

        (3)    The Parties Will Receive a Fair Trial in Either Court, but Equity Owners Choice of Forum Should Not Be Accorded Deference ........................................................................ 14

        (4)    The Delaware Bankruptcy Court Has an Interest in Determining the Subject Controversy ................................... 14

        (5)    Transfer Will Not Affect Any Judgment ........................... 15

        (6)    The Plaintiff's Original Choice of Forum Should Be Disturbed ........ 15

    B.    The Convenience of the Parties Favors Transfer ................................... 16

        (7)    The Location of Plaintiff and Defendant Has Little Bearing on Convenience for Both Parties ........................................... 16

        (8)    Necessary Proof if Easily Accessible in the Delaware Bankruptcy Court .......................................................... 17

(9)        The Convenience of the Witnesses and the Parties Favors
           Transfer to the Delaware Bankruptcy Court ...................................... 17

(10) - (11) The Subpoena Power and Expense of Obtaining Unwilling
           Witnesses Are No Greater in Either Forum ....................................... 17

II.    Alternatively, Transfer of the New York State Court Action to the Delaware Bankruptcy
       Court is Warranted Under 28 U.S.C. § 1404(a) ................................................................ 18

CONCLUSION ........................................................................................................................ 19

# TABLE OF AUTHORITIES

**Cases**

*Adelphia Recovery Trust v. Bank of Am., N.A.,*
   No. 05 Civ. 9050 (LMM), 2009 U.S. Dist. LEXIS 39373 (S.D.N.Y. Mar. 5,
   2009) .................................................................................................................11

*APA Excelsior III L.P. v. Premiere Techs., Inc.,*
   49 F. Supp. 2d 664 (S.D.N.Y. 1999)..............................................................13, 14

*Burns v. Grupo Mex. S.A. de C.V.,*
   No. 07 Civ. 3496 (WHP), 2007 U.S. Dist. LEXIS 84514 (S.D.N.Y. Nov. 16,
   2007) ......................................................................................................12, 13, 17

*Dahl v. HEM Pharm. Corp.,*
   867 F. Supp. 194 (S.D.N.Y. 1994) .....................................................................12

*Enron Corp. v. Arora (In re Enron Corp.),*
   317 B.R. 629 .......................................................................................................16

*Enron Corp. v. Dynegy Inc. (In re Enron Corp.),*
   No. 01-16034 (AJG), 2002 WL 32153911 (Bankr. S.D.N.Y. Apr. 12, 2002)..................11, 16

*ETC Northeast Pipeline, LLC, v. EM Energy Pennsylvania, LLC,*
   Case No. 19-002052...................................................................................... passim

*Forjone v. California,*
   425 Fed. Appx. 73 (2d Cir. 2011)........................................................................18

*Fteja v. Facebook, Inc.,*
   841 F. Supp. 2d 829 (SDNY 2012).....................................................................19

*Hart v. Bello,*
   No. 11 Civ. 67 (RMB), 2011 U.S. Dist. LEXIS 45471 (S.D.N.Y. Apr. 27,
   2011) .............................................................................................................10, 14

*ICICI Bank Ltd.v. Essar Glob. Fund Ltd.,*
   565 B.R. 241 (S.D.N.Y. 2017).............................................................................18

*In re Iridium Operating LLC,*
   285 B.R. 822 (S.D.N.Y. 2002)..........................................................................9, 10

*In re Manville Forest Prods.,*
   896 F.2d at 1391 .............................................................................................10, 12

*Iragorri v. United Techs. Corp.*,
  274 F.3d 65 (2d Cir. 2001) (en banc) ........................................................................15

*Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Turtur*,
  743 F. Supp. 260 (S.D.N.Y. 1990) ............................................................................14

*Official Comm. of Asbestos Claimants of G–I Holding, Inc. v. Heyman*,
  306 B.R. 746 (S.D.N.Y. 2004) ...................................................................................18

*Renaissance Cosmetics, Inc. v. Dev. Specialists Inc.*,
  277 B.R. 5 (S.D.N.Y. 2002) ...........................................................................11, 15, 16

*Wyndham Assocs. v. Bintliff*,
  398 F.2d 614 (2d Cir. 1968) ................................................................................10, 13

**Statutes**

11 U.S.C. § 365 ...................................................................................................................10

28 U.S.C. § 157 ...................................................................................................................19

28 U.S.C. § 157(b)(1) .........................................................................................................9

28 U.S.C. § 157(b)(2) .........................................................................................................9

28 U.S.C. § 1334(b) ...........................................................................................................18

28 U.S.C. § 1404(a) ..........................................................................................1, 9, 18, 20

28 U.S.C. § 1409(a) ...........................................................................................................18

28 U.S.C. § 1412 ........................................................................................................ passim

iv

## PRELIMINARY STATEMENT

This is a removed state court derivative action that was brought by equity owners in now-bankrupt EdgeMarc Energy Holdings, LLC ("EdgeMarc"), on the eve of EdgeMarc's then-imminent bankruptcy filing, asserting claims that are based on alleged harm to EdgeMarc and that now belong to the EdgeMarc bankruptcy estate.   The three-count complaint against midstream provider ETC Northeast Pipeline, LLC alleges breach of contract, unjust enrichment, and negligent misrepresentation. Even assuming, *arguendo*, that the claims have merit, the claims are property of the EdgeMarc estate and, furthermore, raise numerous issues that are within the core jurisdiction of EdgeMarc's bankruptcy court (the "Delaware Bankruptcy Court"); still further, they are overlapping of litigation already pending in state court in Pennsylvania (now removed to the District Court for the Western District of Pennsylvania).  All of this litigation should be transferred to the Delaware Bankruptcy Court in the interest of justice and for the convenience of the parties under 28 U.S.C. § 1412 or 1404(a).

## STATEMENT OF RELEVANT FACTS[1]

EM Energy Pennsylvania, LLC ("EM Energy (PA)"), a subsidiary of upstream oil and gas company EdgeMarc Energy Holdings, LLC ("EdgeMarc"), entered into a gathering and processing agreement (the "Base Agreement") with ETC Northeast Pipeline, LLC ("ETC"), an indirect subsidiary of Energy Transfer, LP, one of America's largest and most diversified midstream energy companies, on November 13, 2017.[2] Pursuant to the Base Agreement, ETC

---

[1] Docket entries in this case (*e.g.*, [Dkt. 1] references docket entry 1); to the Declaration of Beth E. Levine attesting to filings in the Delaware Bankruptcy Court (*e.g.*, [BKC Dec. Ex. A] references Exhibit A to the Beth E. Levine Declaration); and to the Declaration of Gregory P. Graham attesting to filings in the Pennsylvania State Court Action (*e.g.*, [PA Dec. Ex. A] references Exhibit A to the Gregory P. Graham Declaration).

[2] *See* New York Complaint [Dkt. 1, Ex. A, ¶ 40]; Pennsylvania Complaint [PA Dec. Ex. A, ¶ 19].

agreed to "accept or cause to be accepted on a Firm basis those daily quantities of [EM Energy (PA)'s] Gas as set forth in any Individual Transaction Confirmation."[3]

At the same time that EM Energy (PA) and ETC entered into the Base Agreement, the parties also executed two Amended and Restated Individual Transaction Confirmations (individually, "ITC 101" and "ITC 102" and collectively, the "ITCs").[4] The ITCs, *inter alia*, (i) confirmed transactions "for the gathering and processing of Gas or provision of other services to be performed" under the Base Agreement; and (ii) established the "gathering and processing fee(s) . . . for the quantities of Gas . . . gathered and processed" under the Base Agreement.[5] Together, the Base Agreement and the ITCs constitute a single integrated agreement (the "Gathering and Processing Agreement").[6]

The Gathering and Processing Agreement required ETC to place specific based pipeline and gathering facilities identified in ITC 101 (the "Revolution System") in commercial service by January 1, 2019.[7] The Revolution System "enabled the Debtors to gather, process, and—ultimately—sell, gas from several newly drilled wells in Pennsylvania."[8] ETC completed primary construction of the Revolution System in the spring of 2018, and the Revolution System was mechanically complete and ready to be placed in commercial service on or about June 1, 2018.[9] In an act of good faith and in the spirit of accommodation, ETC deferred its contractual right to significant sums under the agreements and instead waited until EM Energy (PA)

---

[3] *See* Pennsylvania Complaint [PA Dec. Ex. A, ¶ 23].

[4] *See* New York Complaint [Dkt. 1, Ex. A, ¶ 40]; Pennsylvania Complaint [PA Dec. Ex. A, ¶ 25].

[5] *See* Pennsylvania Complaint [PA Dec. Ex. A, ¶¶ 21-22].

[6] *See* New York Complaint [Dkt. 1, Ex. A, ¶ 40]; Pennsylvania Complaint [PA Dec. Ex. A, ¶ 24].

[7] *See* New York Complaint [Dkt. 1, Ex. A, ¶ 45]; Pennsylvania Complaint [PA Dec. Ex. A, ¶ 27]; First Day Declaration [BKC Dec. Ex. B, ¶ 7].

[8] *See* New York Complaint [Dkt. 1, Ex. A, ¶ 41]; First Day Declaration [BKC Dec. Ex. B, ¶ 6].

[9] *See* Pennsylvania Complaint [PA Dec. Ex. A, ¶ 32].

affirmed that it was ready to deliver gas, ultimately placing the Revolution System in commercial service on September 9, 2018.[10] Notwithstanding the foregoing, the EM Energy (PA), EdgeMarc, and Equity Owners now claim that the Revolution Service was never in commercial service.[11]

A.    **The Force Majeure Event**

On September 10, 2018, due to factors entirely outside of all parties' control, a landslide occurred causing a fire (the "Revolution Event") along the Revolution System.[12] Despite the Revolution Event, ETC continued to provide gas gathering and processing services, albeit on a reduced basis.[13] ETC incurred significant expense to install a bypass of the affected portion of the system, allowing EM Energy (PA) to connect into another of its nearby gathering pipelines, which, in turn, permitted ETC to continue to provide EM Energy (PA) with gathering services to a third party's processing facility.[14] Therefore, the Revolution Pipeline remained partially operational, and EM Energy (PA) continued to deliver gas under ITC 101.[15] Service under ITC 102 was not affected by the Revolution Event and continued without interruption.[16]

Between September 9, 2018 and January 31, 2019, EM Energy (PA) delivered significant volumes of gas to ETC on the Revolution System, following the terms of ITC 101 and ITC 102.[17] However EM Energy (PA) failed to remit payment due and owing for services rendered

---

[10] *See* New York Complaint [Dkt. 1, Ex. A, ¶ 6]; Pennsylvania Complaint [PA Dec. Ex. A, ¶ 32-37].

[11] *See* New York Complaint [Dkt. 1, Ex. A, ¶¶ 7, 76, and 80]; Pennsylvania Answer, New Matter, and Counterclaims [PA Dec. Ex. B, ¶ 132]; First Day Declaration [BKC Dec. Ex. A, ¶ 7-10].

[12] *See* New York Complaint [Dkt. 1, Ex. A, ¶ 62]; Pennsylvania Complaint [PA Dec. Ex. A, ¶ 41]; First Day Declaration [BKC Dec. Ex. A, ¶ 6].

[13] *See* Pennsylvania Complaint [PA Dec. Ex. A, ¶ 43-46].

[14] *Id.*

[15] *Id.*

[16] *Id.*

[17] *Id.*

by ETC under ITC 101, from September of 2018 through and including December of 2018. [18] It was only on January 29, 2019, after months of continued service under the ITCs and its own acknowledgement of the ITCs enforceability, that EM Energy (PA) wrote ETC alleging that ITC 101 and ITC 102 "shall be and hereby [are] terminated effective January 29, 2019."[19]

Despite its contention that the ITCs are unenforceable, EM Energy (PA) continued to seek to deliver gas to ETC under the Base Agreement.[20] EM Energy (PA) contends that it has "nominated" to deliver gas under the Base Agreement alone. [21] But the Base Agreement cannot operate alone, and without an enforceable ITC, ETC has the right to shut off Defendant's gas services. [22]

**B.    The Pennsylvania State Court Complaint Against Debtor, EM Energy (PA)**

Shortly thereafter, on February 7, 2019, ETC commenced litigation by the filing of a complaint (the "Pennsylvania Complaint") against EM Energy (PA), in the Court of Common Pleas of Allegheny County, Pennsylvania, in a matter styled *ETC Northeast Pipeline, LLC, v. EM Energy Pennsylvania, LLC,* Case No. 19-002052 (the "Pennsylvania State Court Action").[23] Through the Pennsylvania Complaint, ETC seeks (i) a declaratory judgment that the Base Agreement, together with ITCs 101 and 102 are valid and enforceable contracts, and (ii) an award of damages resulting from EM Energy (PA)'s breach of contract and unjust enrichment.[24]

---

[18] *See* Pennsylvania Complaint [PA Dec. Ex. A, ¶¶ 47-48].

[19] See New York Complaint [Dkt. 1, Ex. A, ¶ 82]; Pennsylvania Complaint [PA Dec. Ex. A, ¶¶ 52-55]; First Day Declaration [BKC Dec. Ex. A, ¶ 6].

[20] *See* Pennsylvania Complaint [PA Dec. Ex. A, ¶¶ 56].

[21] *See* Pennsylvania Complaint [PA Dec. Ex. A, ¶¶ 57].

[22] *See* Pennsylvania Complaint [PA Dec. Ex. A, ¶¶ 58].

[23] *See* Pennsylvania Complaint [PA Dec. Ex. A].

[24] *Id.*

EM Energy (PA) responded to the Pennsylvania Complaint on February 27, 2019, filing an answer, new matter, and counterclaims.[25] In its response, EM Energy (PA) alleges, among other things, that (i) the Revolution System never was placed in commercial service, (ii) ETC failed to comply with "pertinent environmental regulations and prudent pipeline construction guidelines" and (iii) the landslide and resulting explosion to the Revolution System was not a *force majeure* event.[26]

The filing of the Delaware Bankruptcy Cases has stayed the Pennsylvania State Court Action and it has been removed to the District Court for the Western District of Pennsylvania.[27] ETC seeks transfer—just as it does here—of that action to the Delaware Bankruptcy Court.

### C.    The Equity Owners' New York State Court Complaint Against ETC

On May 14, 2019, GSCP VI EdgeMarc Holdings, L.L.C., GSCP VI Parallel EdgeMarc Holdings, L.L.C., WSEP and Bridge 2012 EdgeMarc Holdings, L.L.C., and EM Holdco LLC (collectively, the "Equity Owners")[28], filed a three count complaint against ETC (the "New York Complaint") in the Supreme Court of the State of New York, County of New York, Index No. 652906/2019 (the "New York State Court Action").[29]

The New York Complaint alleges that the Equity Owners have invested approximately $850 million in EdgeMarc, and that ETC committed to construct a pipeline system that would allow EdgeMarc to bring its product, natural gas, to market.[30] The New York Complaint further alleges that EdgeMarc's natural gas is now "trapped in wells and not flowing to purchasers", that

---

[25] *See* Pennsylvania Answer, New Matter, Counterclaims [PA Dec. Ex. B].

[26] *Id.*

[27]*See* Pennsylvania Notice of Stay and Amended Notice of Filing of Notice of Removal [PA Dec. Ex. F-G].

[28] The Equity Owners purportedly currently own approximately 99% of the equity in EdgeMarc. *See* New York Complaint [Dkt. 1, Ex. A, ¶ 20].

[29] *See* New York Complaint [Dkt. 1, Ex. A].

[30] *Id.* at 1.

ETC is at fault, and that Equity Owners "have thus suffered hundreds of millions of dollars in losses and may lose their entire investment" in EdgeMarc.[31] The crux of the claims encompassed by the New York Complaint hinge on the Equity Owner's allegations that the Revolution System was not in commercial service prior to January 1, 2019, and that the landslide that damaged the Revolution System was not a *force majeure* event.

Notably, the New York Complaint pleads damages based upon alleged breaches by ETC of the Gathering and Processing Agreement (i.e. the Base Agreement and the ITCs) entered into by and between EM Energy (PA) and ETC. Importantly, the Equity Owners are not party to the Base Agreement and ITCs.[32] The New York Complaint seeks adjudication of, among other things, ETC's compliance with the terms of its respective agreements with EM Energy (PA), namely whether ETC constructed the Revolution System pipeline according to required standards.[33] Accordingly, and as the following illustrations instruct, the facts and legal issues raised in the NY State Court Action are entirely duplicative and inextricably intertwined with those facts and legal matters at issue in the Pennsylvania State Court Action:

    i.  The New York Complaint pleads damages based upon alleged breaches by ETC of the Base Agreement and ITCs, all being contracts by and between Debtor EM Energy (PA) and ETC, *not Equity Owners*. [Dkt. 1, Ex. A, ¶¶ 92-95] Nevertheless, by the New York Complaint, Equity Owners seek to adjudicate important and material rights, claims and liabilities of Debtor EM Energy (PA) under the Base Agreement and the ITCs.

    ii. The New York Complaint seeks adjudication of, among other things, ETC's compliance with the terms of its agreements with Debtor EM Energy (PA) namely whether ETC constructed the Revolution System pipeline according to required standards. [Dkt. 1, Ex. A, ¶ 47]

    iii. The New York Complaint hinges on Equity Owners' allegations that the landslide that damaged the Revolution System was not a *force majeure*

---

[31] *Id.*

[32] *Id.* at ¶ 40.

[33] *Id.* at 47.

event, a critical—if not dispositive—issue in Debtor EM Energy (PA)'s litigation with ETC. [Dkt. 1, Ex. A, ¶ 63]

  iv.  The New York Complaint seeks a determination of whether statements and representations made to Debtor EM Energy (PA) (the same statements made to Equity Owners) were negligent. Therefore, the New York Complaint seeks to adjudicate potential claims by estate of Debtor EM Energy (PA) against ETC. [Dkt. 1, Ex. A, ¶ 38] ("The Equity Owners *and EdgeMarc* pursued the Pennsylvania option after receiving assurances from Energy Transfer…") (emphasis added). *See also* [Dkt. 1, Ex. A, ¶ 52] ("Gatherer shall deliver a notice…to Sponsors *and Shipper* [Debtor EM Energy (PA)]…") (emphasis added).

  v.  Equity Owners plead that ETC has caused harm and damages to the Equity Owners <u>and</u> Debtor EM Energy (PA). *See* [Dkt. 1, Ex. A, ¶ 13]. Equity Owners further plead that the alleged damages occurred because "EdgeMarc has *been* unable to satisfy the volume requirements of its 'take or pay' natural gas delivery contracts." *See* [Dkt. 1, Ex. A, ¶ 13]. Lastly, Equity Owners plead that ETC "has damaged the value of the [Plaintiffs'] investment in EdgeMarc." [Dkt. 1, Ex. A, ¶ 89]. Therefore, the claims pleaded are derivative of the rights of Debtor EM Energy (PA) under the Gathering and Processing Agreement, and alleged harm to the Debtor EM Energy (PA) and thus represent assets of the Debtors' estates.

Since the filing of the Delaware Bankruptcy Cases, the Equity Owners have continued to press their claims against ETC in the New York State Court Action. Indeed on May 31, 2019, the Equity Owners issued to ETC discovery, seeking, among other things, "all Documents and Communications" concerning the "design, engineering, or construction of the Pipeline System", "the Pipeline Explosion", and "the Force Majeure Notice."

### D.  The Delaware Bankruptcy Cases

On May 15, 2019 (the "Petition Date"), EdgeMarc, together with eight affiliated debtors (each a "Debtor" and collectively, the "Debtors")[34] filed voluntary petitions for relief under chapter 11 of the United States Bankruptcy Code in the Delaware Bankruptcy Court (the

---

[34] The Debtors in the jointly administered Delaware Bankruptcy Court cases are: EdgeMarc Energy Holdings, LLC, EM Energy Manager, LLC, EM Energy Employer, LLC, EM Energy Ohio, LLC, EM Energy Pennsylvania, LLC, EM Energy West Virginia, LLC, EM Energy Keystone, LLC, EM Energy Midstream Ohio, LLC, and EM Energy Midstream Pennsylvania, LLC.

"Delaware Bankruptcy Cases").[35] The Debtors' business is the exploration and production of natural gas in the Appalachian Basin, concentrated in shale formations in Monroe and Washington Counties in Ohio and Butler County in Pennsylvania.[36]

The declaration of Callum Streeter, the Debtors' CEO and member of the Board of Managers of EdgeMarc, filed in support of the Debtors' Chapter 11 Petitions and various first day pleadings, attributes the Debtors' need to commence bankruptcy proceedings to the Revolution Event, the Debtors' resulting "inability to sell gas from their Pennsylvania properties" and the resulting "substantial negative impact on their liquidity and ability to satisfy their funded debt, contractual and other payment obligations."[37] The Debtors purportedly exercised their business judgment in opting to "shut in" their Pennsylvania wells and pause all remaining Pennsylvania operations, because "the Debtors could not flow through ETC's Revolution System due to the Revolution Event and because ETC refused to gather the Debtors' gas via other infrastructure, and because the Debtors had no other means of selling gas from the affected wells."[38]

The Debtors intend to pursue a sale of all or substantially all their assets in the Delaware Bankruptcy Cases.[39] A resolution of the disputes and claims related to the Revolution System is critically material to the value of the Debtors' estates and, thus, is subject to the core jurisdiction of the Delaware Bankruptcy Court.  Moreover, ETC should not be subjected to multiple cases

---

[35] *See* Voluntary Petition [BKC Dec. Ex. A]

[36] *See* First Day Declaration [BKC Dec. Ex. B, ¶ 5]

[37] *Id.* at ¶ 11.

[38] *Id*. at ¶ 9. The business judgment of the Debtors' decision to shut in its own wells by terminating the ITCs is questionable, at best.  Rather than continuing to sell gas and generate revenue, terminating the ITCs, and shutting in its wells appears to have served only the interests of its equity sponsors, that is, preservation of the claims brought by the Equity Owners against ETC.

[39] *Id*. at ¶ 5.

related to the same factual scenario with the obvious possibility of inconsistent results and resulting obligations.

## ARGUMENT

The claims raised in the New York State Court Action are estate property and raise several issues that are core proceedings in the Delaware Bankruptcy Cases. Accordingly, the interests of justice strongly favor transfer to the District of Delaware. Transfer is further warranted in the interests of justice and for the convenience of the parties because the Delaware Bankruptcy Court is intimately familiar with the parties and the factual history, it would avoid the risk of duplicative litigation and inconsistent results, and it would be convenient for all parties.

Alternatively, the controversy at hand is indisputably connected to the EdgeMarc Bankruptcy. Thus, at a minimum, "related to" jurisdiction exists, and this case should be transferred pursuant to 28 U.S.C. § 1404(a) for all of the same reasons (since the analysis for the transfer of related-to proceedings under § 1404 does not materially differ from the analysis under § 1412).

I.    **Transfer of the New York State Court Action to the Delaware Bankruptcy Court is Warranted Under 28 U.S.C. § 1412**

Because the New York State Court Action is a core bankruptcy proceeding under 28 U.S.C. § 157(b)(1) and (2), the case may be transferred to another district pursuant to 28 U.S.C. § 1412 "in the interest of justice or for the convenience of the parties."  28 U.S.C. § 1412; *In re Iridium Operating LLC*, 285 B.R. 822, 835 (S.D.N.Y. 2002). Matters "arising under" or "arising in" bankruptcy cases are core proceedings.  *See* 28 U.S.C. § 157(b)(1). The New York State Court Action is within the Delaware Bankruptcy Court's "core" jurisdiction within the meaning of 28 U.S.C. § 157(b)(1) and (2), because it, *inter alia*: (i) seeks a determination of the value of

the Equity Owners' interests in the Debtors; (ii) involves the resolution of bankruptcy estate claims and/or counterclaims; (iii) affects the administration of the Debtors' bankruptcy estates and seeks to adjust the debtor-creditor and debtor-equity security holder relationships; and (iv) affects the administration of the Debtors' bankruptcy estates and the liquidation of the assets of the estate. *See* 28 U.S.C. § 157(b)(2)(A)-(C), and (O).[40]

Although a party seeking transfer under 28 U.S.C. § 1412 need satisfy only a preponderance-of-the-evidence standard, *Manville Forest Prods. Corp. (In re Manville Forest Prods. Corp.),* 896 F.2d 1384, 1390-91 (2d Cir. 1990) (internal citations and quotation omitted); here, consideration of the interests of justice and the convenience of the parties overwhelmingly support transfer to the Delaware Bankruptcy Court.

As a general matter, "the district in which the underlying bankruptcy case is pending is presumed to be the appropriate district for hearing and determination of a proceeding in bankruptcy." *In re Manville Forest Prods.,* 896 F.2d at 1391; *see also Hart v. Bello*, No. 11 Civ. 67 (RMB), 2011 U.S. Dist. LEXIS 45471, at *7 (S.D.N.Y. Apr. 27, 2011). Indeed, "the interests of justice and the public interest in centralization of bankruptcy proceedings weigh heavily in favor of retaining [a core bankruptcy proceeding] where the underlying bankruptcy case is being adjudicated." *In re Iridium Operating LLC*, 285 B.R. at 837; *see also Wyndham Assocs. v. Bintliff,* 398 F.2d 614, 619-20 (2d Cir. 1968) (noting the "strong policy favoring the litigation of related claims in the same tribunal" in affirming transfer of a bankruptcy-related case).

---

[40] Specifically, resolution of the New York State Court Action will require a determination of whether the ITCs have been properly terminated by Debtor EM Energy (PA), or alternatively, whether such contracts remain executory contracts subject to assumption or rejection by the Debtors pursuant to 11 U.S.C. § 365. As the Debtors are currently running a court supervised sale process before the Delaware Bankruptcy Court, any sale of the Debtors' assets will likely require the assumption and assignment of the Gathering and Processing Agreement to a successful buyer—especially as the Debtors acknowledged in the first day filings that they have at present "no other means of selling the gas from the affected wells" absent access to ETC's infrastructure. Aff. ¶ 9. Thus, the outcome of the New York State Court Action litigation, namely, the attendant adjudication of alleged defaults, rights, claims and terminations of such contracts, will undoubtedly impact the Debtors' sale process.

A.    **The Interests of Justice Mandate Transfer**

Under § 1412, courts consider six factors to determine whether transfer is in the interests of justice:

> 1) whether transfer would promote the economic and efficient administration of the bankruptcy estate; 2) whether the interests of judicial economy would be served by the transfer; 3) whether the parties would be able to receive a fair trial in each of the possible venues; 4) whether either forum has an interest in having the controversy decided within its borders; 5) whether the enforceability of any judgment would be affected by the transfer; and 6) whether the plaintiffs['] original choice of forum should be disturbed.

*Enron Corp. v. Dynegy Inc. (In re Enron Corp.),* No. 01-16034 (AJG), 2002 WL 32153911, at *4 (Bankr. S.D.N.Y. Apr. 12, 2002).

(1)    **Transfer Promotes Economic and Efficient Administration of the Bankruptcy Estates**

In examining the interests of justice, a principal consideration is the promotion of efficiency and judicial economy, both of which are advanced when a bankruptcy proceeding is transferred to the district in which a bankruptcy is or has been pending. *See, e.g., Renaissance Cosmetics, Inc. v. Dev. Specialists Inc.,* 277 B.R. 5, 19 (S.D.N.Y. 2002) (where bankruptcy was pending in the District of Delaware, and where the Delaware court was "intimately familiar with the parties and the factual history," transfer to the District of Delaware appropriate); *Adelphia Recovery Trust v. Bank of Am., N.A.,* No. 05 Civ. 9050 (LMM), 2009 U.S. Dist. LEXIS 39373, at *33-34 (S.D.N.Y. Mar. 5, 2009) (finding it "inefficient" to preside over bankruptcy-related claims where a bankruptcy court in another district was more familiar with the relevant facts, law, and procedural background).

Transfer pursuant to 28 U.S.C. § 1412 is particularly appropriate when a proceeding involves "issues virtually identical" to those that have been or will be considered by a

bankruptcy court. *In re Manville Forest Prods.*, 896 F.2d at 1391 (internal quotation marks omitted); *Burns v. Grupo Mex. S.A. de C.V.*, No. 07 Civ. 3496 (WHP), 2007 U.S. Dist. LEXIS 84514, at *16 (S.D.N.Y. Nov. 16, 2007) (transferring bankruptcy-related case where the transferee court "ha[d] already spent significant time" on nearly identical issues); *see also Dahl v. HEM Pharm. Corp.*, 867 F. Supp. 194, 197 (S.D.N.Y. 1994) ("[I]t would be a patent misuse of judicial resources" to require another court "to review and become familiar with the facts and circumstances already extensively excavated by another Federal District Court.").

Here, transferring the New York State Court Action—as well as the Pennsylvania State Court Action[41]—to the District of Delaware will eliminate the need for yet another court to devote significant resources to understanding the detailed interwoven factual history surrounding both pending state court cases, as these identical legal and factual issues will need to be conclusively determined by the Delaware Bankruptcy Court during the course of the Delaware Bankruptcy cases. To be sure, transferring this action to the District of Delaware Bankruptcy Court would, *inter alia*, conserve resources by avoiding the substantial investment of time and energy that would be required for two courts to learn the storied set of facts underlying this dispute including facts related to: EdgeMarc's equity funding and credit facilities; extensive negotiations related to the Base Agreement and ITCs; the Revolution System *force majeure* event; whether the Gathering and Processing Agreement has been terminated or is an active executory contract capable of being assumed and assigned in a sale process; and the Debtors' decision to file a chapter 11 petition.

No party can dispute that the factual issues concerning access to the Revolution Gathering System are material to the value of the Debtors' estates and crucial to maximizing

---

[41] ETC has filed a Notice of Removal of the Pennsylvania State Court Action, and will be filing an accompanying Motion to Transfer Venue to the Delaware Bankruptcy Court.

value in a sale process.  As such, they are central to the jurisdiction of the Delaware Bankruptcy Court, which is also the court best situated to economically and efficiently manage the scope of the litigation and ensure optimal value to the Debtors' estates.  For these reasons, transfer pursuant to 28 U.S.C. § 1412 is proper.

### (2)    Transfer Avoids the Risk of Duplicative Litigation and Inconsistent Results

Transfer pursuant to 28 U.S.C. § 1412 is also appropriate in the interests of judicial economy because it avoids the risk of duplicative litigation. This is so because adjudicating the competing claims related to performance under the Base Agreement and ITCs in the Debtors' Bankruptcy Cases will almost certainly involve issues that will likewise need to be decided in this action including whether (i) ETC and EdgeMarc performed under the agreements; and (ii) a *force majeure* event occurred.

Where adjudicating a case poses a risk of duplicative or overlapping litigation, courts regularly find transfer warranted in the interests of justice. *See, e.g., Wyndham Assocs*., 398 F.2d at 619-20 (avoiding potentially duplicative litigation supports transfer); *Burns*, 2007 U.S. Dist. LEXIS 84514, at *15-16 (same). This is especially true where there is a possibility that, absent transfer, courts may issue inconsistent or conflicting rulings. *See Burns*, 2007 U.S. Dist. LEXIS 84514, at *15-16; *APA Excelsior III L.P. v. Premiere Techs., Inc*., 49 F. Supp. 2d 664, 670 (S.D.N.Y. 1999).

Here, the New York State Court Action—which alleges breach of contract, unjust enrichment, and negligent misrepresentation—will require a court to determine whether ETC or EdgeMarc breached the terms of the Base Agreement and ITCs and whether a *force majeure* event occurred. The Delaware Bankruptcy Court will need to make an identical determination in adjudicating whether ETC's claims against EdgeMarc are viable and how they should be treated

as part of a plan of reorganization. Absent transfer, there is a material risk of inconsistent rulings and overlapping litigation. This independently counsels strongly in favor of transfer. *E.g., APA Excelsior III, 49 F. Supp. 2d at 670* (transfer appropriate in the interests of justice where a related action "hinge[d] on the same core of operative facts" and transfer would "avoid[ ] duplicative litigation and the risk of inconsistent rulings"); *see also Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Turtur*, 743 F. Supp. 260, 263-64 (S.D.N.Y. 1990) ("[A]s a general proposition, cases should be transferred to the district where related actions are pending.") (citation and internal quotation marks omitted).

### (3)    The Parties Will Receive a Fair Trial in Either Court, but Equity Owners Choice of Forum Should Not Be Accorded Deference

The parties almost certainly would receive a fair trial in this District or the Delaware Bankruptcy Court.  ETC should not, however, be required to litigate identical issues in New York State Court and the Delaware Bankruptcy Court and potentially the Pennsylvania State Court should that case not be transferred.  Fairness dictates that the trial should take place in the Delaware Bankruptcy Court.

### (4)    The Delaware Bankruptcy Court Has an Interest in Determining the Subject Controversy

It is indisputable that the two main parties to the subject controversy are EdgeMarc and ETC.  It is also irrefutable that the District of Delaware has an interest in determining the controversy, as it is the venue for EdgeMarc's bankruptcy.  On the other hand, this District has no real tie to the controversy.  Where, as here, a proceeding arising under title 11 is brought in a district other than the district in which the underlying bankruptcy case is or has been pending, "[t]he weight normally attached to the plaintiff's choice of forum is effectively cancelled out." *Hart*, 2011 U.S. Dist. LEXIS 45471, at *17. Moreover, when a plaintiff's selected forum is not where the plaintiff resides, "the degree of deference given to plaintiff's choice of forum depends

on the motivations behind that choice" – with "diminishing deference" given to a plaintiff's choice of a non-home forum that "was motivated by tactical advantage, such as forum shopping." *Renaissance Cosmetics*, 277 B.R. at 18, 20 (citation and internal quotation marks omitted) (transferring case where the plaintiff's choice of forum appeared to be motivated by the "desire to avoid the Delaware Bankruptcy Court, which previously found" unfavorably toward it).

### (5)    Transfer Will Not Affect Any Judgment

All three proceedings are in relative infancy, with the Pennsylvania State Court litigation having commenced in February 2019 and the New York State Court Action and EdgeMarc Bankruptcy having been filed only weeks ago.  The parties are nowhere near judgment, and transfer of this proceeding will have no impact on any judgment or delay resolution of the cases.

### (6)    The Plaintiff's Original Choice of Forum Should Be Disturbed

There can be no serious question that the Equity Owners engaged in forum shopping when they carefully crafted a complaint which strategically omitted the Debtor *one day prior to its bankruptcy filing*. Accordingly, the plaintiffs' choice of forum should not be afforded deference. *Iragorri v. United Techs. Corp.*, 274 F.3d 65, 72 (2d Cir. 2001) (en banc) (the more a plaintiff's choice of forum is motivated by forum-shopping, "the less deference the plaintiff's choice commands").  It is worth noting that at least two of EdgeMarc's board members are indirectly related to the Equity Owners as Goldman Sachs employees.  Both directors voted in favor of filing the chapter 11 petition in the Delaware Bankruptcy Court.  Consequently, the Plaintiff's choice of forum in New York richly deserves to be disturbed.

### B.    The Convenience of the Parties Favors Transfer

The convenience of the parties likewise favors transfer to the Delaware Bankruptcy Court.[42]  Courts have considered the following additional factors to determine whether transfer is convenient for the parties:

> 7) the location of the plaintiff and the defendant; 8) the ease of access to the necessary proof; 9) the convenience of the witnesses and the parties and their relative physical and financial condition; 10) the availability of the subpoena power for unwilling witnesses; and 11) the expense of obtaining unwilling witnesses.

*Enron Corp.*, 2002 WL 32153911, at *4.

### (7)    The Location of Plaintiff and Defendant Has Little Bearing on Convenience for Both Parties

Both the Equity Owners and ETC have significant resources and access to counsel.  In fact, all of the parties to the State Court Action are Delaware limited liability companies.[43]  In contrast, only three of the Equity Owners maintain their principal place of business in New York County. The Equity Owners have been active participants in the EdgeMarc Bankruptcy in the District of Delaware appearing through local counsel Drinker Biddle & Reath LLP on May 15, 2019, appearing through counsel at the First Day hearing on May 16, 2019, and appearing through the New York State Court Action counsel, Wachtell, Lipton, Rosen & Katz *pro hac vice* on May 20, 2019.[44]  None of the Equity Owners would be inconvenienced by transfer to that court. *E.g., Renaissance Cosmetics,* 277 B.R. at 19 (granting defendants' motion to transfer

---

[42]  Under 28 U.S.C. § 1412, transfer may be appropriate <u>either</u> "in the interest of justice or for the convenience of the parties." 28 U.S.C. § 1412 (emphasis added); *see Enron Corp. v. Arora (In re Enron Corp.)*, 317 B.R. 629, 637 (Bankr. S.D.N.Y. 2004 ("transferability pursuant to [section] 1412 is an either-or-test, not a two-fold one") (citation and internal quotation marks omitted).

[43]  *See* New York Complaint [Dkt. 1, Ex. A, ¶¶ 15-21].

[44]  *See* Delaware Bankruptcy Court Docket Nos. 34, 51, and 72-74 [BKC Dec., Ex. D-H].

where "parties are large, national professional firms who would not be seriously inconvenienced if required to travel to Delaware").

#### (8)    Necessary Proof if Easily Accessible in the Delaware Bankruptcy Court

The Base Agreement and ITCs relate to operations exclusively in western Pennsylvania and the necessary proof is just as easily accessible in the Delaware Bankruptcy Court. Maintaining this matter in New York would offer no advantage for purposes of access to the proofs.

#### (9)    The Convenience of the Witnesses and the Parties Favors Transfer to the Delaware Bankruptcy Court

The witnesses for each of the three proceedings are likely to be the same and should not be forced to provide testimony in three separate fora. "[T]he presence of all litigation in one district . . . , in the aggregate, further[s] the convenience of the parties." *Burns*, 2007 U.S. Dist. LEXIS 84514, at *17. By transferring this action to the Delaware Bankruptcy Court, where the EdgeMarc Bankruptcy is pending and the closely related claims will be resolved, this Court thus would not only promote judicial economy and avoid the prospect of duplicative litigation and inconsistent results – it would make this action more convenient for all parties. This too supports transfer under 28 U.S.C. § 1412. *Id.*

#### (10) - (11)    The Subpoena Power and Expense of Obtaining Unwilling Witnesses Are No Greater in Either Forum

Resolution of this dispute in this District as opposed to the Delaware Bankruptcy Court offers no greater subpoena power and therefore no advantage. Moreover, the expense of obtaining unwilling witnesses will be equal here or in the Delaware Bankruptcy Court. These considerations are neutral and therefore of no benefit to plaintiff or defendant.

All factors being considered together dictates that the Delaware Bankruptcy Court is the more convenient forum for all parties.  This case should be transferred pursuant to 28 U.S.C. § 1412.

## II.     Alternatively, Transfer of the New York State Court Action to the Delaware Bankruptcy Court is Warranted Under 28 U.S.C. § 1404(a)

Alternatively, and for all the foregoing reasons, transfer to the Delaware District Court is likewise appropriate under 28 U.S.C. § 1404(a).[45]   Section 1404(a) provides, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). In determining whether to transfer venue pursuant to Section 1404(a), district courts engage in the following two-part inquiry: (1) whether the action might have been brought in the proposed forum; and (2) whether the transfer promotes convenience and fairness. *Forjone v. California*, 425 Fed. Appx. 73, 74 (2d Cir. 2011).  The decision of whether to transfer venue is left to the sound discretion of the trial court. *Id*.

The New York State Court Action could have been brought in the Delaware Bankruptcy Court since that is the location of the EdgeMarc and EM Energy (PA) jointly administered bankruptcies. *See* 28 U.S.C. § 1409(a) ("a proceeding arising under title 11 or arising in or related to a case under title 11 may be commenced in the district court in which such case is pending"); 28 U.S.C. § 1334(b) (a bankruptcy court has subject matter jurisdiction over all matters "arising in or related to cases under title 11"). The Equity Owners own approximately 99% of the equity in EdgeMarc, are Delaware limited liability companies, and have participated

---

[45] Where a party seeks to transfer venue for a core proceeding, the applicable statute is 28 U.S.C. § 1412," the bankruptcy change of venue statute, *see Official Comm. of Asbestos Claimants of G–I Holding, Inc. v. Heyman*, 306 B.R. 746, 749 (S.D.N.Y. 2004), whereas "[t]ransfer of venue for noncore proceedings is governed by 28 U.S.C. § 1404(a)," the general change of venue statute, *ICICI Bank Ltd.v. Essar Glob. Fund Ltd.*, 565 B.R. 241, 248 (S.D.N.Y. 2017). There is no need here to determine whether the New York State Court Action Claims are core or non-core because transfer is warranted under either statute.

in the Delaware Bankruptcy cases. Therefore, the Delaware Bankruptcy Court has personal jurisdiction over the Equity Owners.

In evaluating convenience and fairness, courts may consider the following factors: "(1) the plaintiff's choice of forum; (2) the convenience of witnesses; (3) the location of relevant documents and relative ease of access to sources of proof; (4) the convenience of parties; (5) the locus of operative facts; (6) the availability of process to compel attendance of unwilling witnesses; and (7) the relative means of the parties." *Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 832 (SDNY 2012). As further discussed in Section I above, consideration of convenience and fairness dictate that the New York State Court Action, as well as the Pennsylvania State Court Action, should be transferred to the Delaware Bankruptcy Court.

Likewise, and again as more fully detailed in Section I above, judicial economy, timely resolution, and consistency in rulings also favor transfer. The New York State Court Action is closely related to a complex bankruptcy matter that is currently pending before the Delaware Bankruptcy Court. Thus, that court is and will continue to be well versed in these issues. Indeed, a transfer to the Delaware Bankruptcy Court will most likely lead to a more expedient resolution of this matter and would obviate the need for another court to learn the intricacies surrounding a bankruptcy proceeding geared toward a fast-track sale. For these reasons, the transfer of the New York State Court Action to the Delaware Bankruptcy Court is warranted.

## **CONCLUSION**

The Equity Owners entirely derive their claims from EdgeMarc, a debtor-in-possession in the Delaware Bankruptcy Court. Such claims are property of the estate and raise issues comprising core matters under 28 U.S.C. § 157 and, pursuant to 28 U.S.C. § 1412, should be adjudicated by the Delaware Bankruptcy Court in the interest of justice and convenience of the parties. Alternatively, those claims are inextricably related to EdgeMarc's bankruptcy

proceeding and under 28 U.S.C. § 1404(a) must be transferred to the Delaware Bankruptcy

Court.  The interests of justice and the convenience of the parties are best served by transfer.

Dated: June 11, 2019                    PACHULSKI STANG ZIEHL & JONES LLP

                                        */s/ Beth E. Levine*
                                        Laura Davis Jones (*pro hac vice* application to be
                                        filed)
                                        Beth E. Levine
                                        PACHULSKI STANG ZIEHL & JONES LLP
                                        780 Third Avenue, 34th Floor
                                        New York, NY 10017
                                        Telephone:  (212) 561-7700
                                        Facsimile:  (212) 561-7777
                                        Email: ljones@pszjlaw.com
                                               blevine@pszjlaw.com

                                        and

                                        Michael P. Lynn (*pro hac vice* application to be filed)
                                        Chris Patton
                                        John Adams (*pro hac vice* application to be filed)
                                        LYNN PINKER COX & HURST, L.L.P.
                                        2100 Ross Avenue, Suite 2700
                                        Dallas, Texas  75201
                                        Telephone:  (214) 981-3800
                                        Facsimile:  (214) 981-3839
                                        Email: mlynn@lynnllp.com
                                               cpatton@lynnllp.com
                                               jadams@lynnllp.com

                                        *Counsel to ETC Northeast Pipeline, LLC*