**Hearing Date: August 27, 2019 at 2:00 p.m. (ET)**
**Objection Deadline: July 8, 2019 at 4:00 p.m. (ET)**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

GSCP VI EDGEMARC HOLDINGS, L.L.C., GSCP VI PARALLEL EDGEMARC HOLDINGS, L.L.C., WSEP AND BRIDGE 2012 EDGEMARC HOLDINGS, L.L.C., AND EM HOLDCO LLC,

Plaintiffs,

vs.

ETC NORTHEAST PIPELINE, LLC,

Defendant.

Adv. Proc. No. 19-01293 (JLG)

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**

PACHULSKI STANG ZIEHL & JONES LLP
Laura Davis Jones (*pro hac vice* application to be filed)
Beth E. Levine
PACHULSKI STANG ZIEHL & JONES LLP
780 Third Avenue, 34th Floor
New York, NY 10017
Telephone: (212) 561-7700
Facsimile: (212) 561-7777

and

Michael P. Lynn (*pro hac vice* application to be filed)
Chris Patton
John Adams (*pro hac vice* application to be filed)
LYNN PINKER COX & HURST, L.L.P.
2100 Ross Avenue, Suite 2700
Dallas, Texas 75201
Telephone: (214) 981-3800
Facsimile: (214) 981-3839

*Counsel to ETC Northeast Pipeline, LLC*

# TABLE OF CONTENTS

Preliminary Statement ........ 1

I. Procedural Background ........ 2

II. Argument ........ 3

A. Goldman Sachs's alleged contract includes a "sole and exclusive remedy" provision that precludes this suit for damages. ........ 4

B. Moreover, Goldman's claims fail as a matter of law, because any injury was to Edgemarc, not Goldman Sachs. ........ 7

C. Plaintiffs' tort claims are impermissible re-pleadings of contract claim. ........ 10

1. Plaintiffs' unjust enrichment claim must be dismissed because a valid contract exists, and Plaintiffs pleaded no enrichment to ETC. ........ 11

2. Plaintiffs' negligent misrepresentation claim fails as a matter of law because it is a regurgitated breach of contract claim. ........ 13

III. Conclusion ........ 13

# TABLE OF AUTHORITIES

**Cases**

*Ambac Assur. Corp. v. EMC Mortg. LLC*,
121 A.D.3d 514 (2014) .......... 6

*Ashcroft v. Iqbal*,
556 U.S. 662, 678 (2009) .......... 3

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .......... 3

*Beth Israel Med. Ctr. v. Horizon Blue Cross and Blue Shield of N.J., Inc.*,
448 F.3d 573 (2d Cir. 2006) .......... 11

*Carlin v. Davidson Fink LLP*,
852 F.3d 207 (2d Cir. 2017) .......... 3

*Chambers v. Time Warner, Inc.*,
282 F.3d 147 (2d Cir. 2002) .......... 3

*Chevron Corp. v. Donziger*,
871 F. Supp. 2d 229 (S.D.N.Y. 2012) .......... 12

*Clark–Fitzpatrick, Inc. v. Long Island R.R.*,
70 N.Y.2d 382, 389 (1987) .......... 13

*Debussy LLC v. Deutsche Bank AG*,
242 Fed. App'x 735, 736–37 (2d Cir. 2007) .......... 8

*Deutsche Lufthansa AG v. The Boeing Co.*,
06 CV 7667 (LBS), 2006 WL 3155273, at *4 (S.D.N.Y. Oct. 30, 2006) .......... 6

*Document Sec. Sys., Inc. v. Coupons.com, Inc.*,
11-CV-6528 CJS, 2012 WL 3597769, at *5 (W.D.N.Y. Aug. 20, 2012) .......... 11

*Donchatz v. HSBC Bank United States, N.A.*,
14-CV-194, 2015 WL 860760, 2015 U.S. Dist. LEXIS 24136 (W.D.N.Y. Feb. 27, 2015) .......... 11

*Edo v. Martiny*,
15-CV-202 (CBA), 2017 WL 785653 (E.D.N.Y. Mar. 1, 2017 .......... 2

*ExamWorks, Inc. v. Soltys*,
17-CV-80, 2017 WL 4680410 (W.D.N.Y. Oct. 18, 2017) .......... 12

*Fishman v. Philadelphia Fin. Life Assurance Co.*,
11 Civ. 1283, 2016 WL 2347921, 2016 U.S. Dist. LEXIS 58862 (S.D.N.Y. May 3, 2016) .......... 11

*Global Funding Group. LLC v. 133 Community Road, Ltd.*,
251 F. Supp. 3d 527 (E.D.N.Y. 2017) .......... 11

*Hollander v. Garrett*,
710 Fed. App'x 35 (2d Cir. 2018) .......... 3

*In re Bernard L. Madoff Inv. Sec. LLC*,
740 F.3d 81, 89 (2d Cir. 2014) .......... 10

*In re Bernard L. Madoff Inv. Sec. LLC.*,
721 F.3d 54, 70 (2d. Cir. 2013) .......... 10

*In re REFCO Inc. Sec. Litig.*,
07 MDL 1902(JSR), 2010 WL 1404198 (S.D.N.Y. Mar. 31, 2010) .......... 8

*In re Van Dresser Corp.*,
128 F.3d 945 (6th Cir. 1997) ........ 8
*In re WorldCom, Inc.*,
323 B.R. 844 (Bankr. S.D.N.Y. 2005) ........ 10
*Kaye v. Grossman*,
202 F.3d 611 (2d Cir. 2000) ........ 12
*LaSalle Bank Nat. Assoc. v. Citicorp Real Estate Inc.*,
02 CIV. 7868 (HB), 2003 WL 1461483, at *3–4 (S.D.N.Y. Mar. 21, 2003) ........ 13
*Nelson v. MillerCoors, LLC*,
246 F. Supp. 3d 666 (E.D.N.Y. 2017 ........ 11
*New Paradigm Software Corp. v. New Era of Networks, Inc.*,
107 F. Supp. 2d 325 (S.D.N.Y. 2000) ........ 11
*Pollak v. Bank of Am.*,
12 CV 7726 VB, 2013 WL 4799264, at *3 (S.D.N.Y. Aug. 27, 2013) ........ 11
*Rothman v. Gregor*,
220 F.3d 81 (2d Cir. 2000) ........ 3
*St. Paul Fire & Marine Ins. Co.*,
884 F.2d 688 (1989) ........ 10
*Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*,
146 F.3d 66 (2d Cir. 1998) ........ 2
*Steinbeck v. Steinbeck Heritage Foundation*,
400 Fed. App'x 572 (2d Cir. 2010) ........ 12

**Statutes**

11 U.S.C. § 541 ........ 10

**Rules**

F.R.C.P. 12(b)(7) ........ 7
F.R.C.P. 19 ........ 7

**<u>Preliminary Statement</u>**

Plaintiffs (i.e. Goldman Sachs) seek nothing less than to skip ahead of a bankruptcy debtor and collect monies that do not belong to them. They should not be permitted to do so, and their claims should be dismissed.

Goldman Sachs's Complaint hinges on allegations asserting alleged injuries to a company it invested in—Edgemarc Energy Holdings, LLC and its affiliated bankruptcy debtors (collectively, "Edgemarc"). For example, Goldman Sachs complains that a 2018 landslide "has cost ***Edgemarc*** more than a million dollars every month," that "***Edgemarc*** incurred penalties," and that "***Edgemarc's*** natural gas in Pennsylvania is now 'shut in.'" But Edgemarc is not a plaintiff in this case, only its investors are. Moreover, Edgemarc brought its own claims against ETC in a separate suit and then filed for bankruptcy in Delaware, which stayed all of its claims against ETC. Critically though, Edgemarc's separate claims against ETC are premised on the same alleged breaches and the same alleged injuries that Goldman Sachs seeks to litigate here.

Ultimately, then, Goldman Sachs lacks standing in this case, because its claims are based on an injury to Edgemarc. But Goldman Sachs's lack of standing aside, the claims in this case are barred by the very "commitment letters," that Goldman Sachs sues upon. Those letters are unmistakable that if every allegation Goldman Sachs pleaded is taken as true, then its ***"sole and exclusive remedy***," was termination, not a suit for damages against ETC.

In short, Goldman Sachs's claims must be dismissed for the following reasons:

1. Goldman Sachs's claims for breach of contract are premised on commitment letters that by their express terms preclude the relief Goldman Sachs seeks here;

2. Goldman Sachs does not have standing, because the real party in interest is Edgemarc, which is seeking the same recovery in other related proceedings; and

3. Goldman Sachs cannot plead plausible tort claims when a valid contract exists, and the only relationship between the parties is contractual.

## I. Procedural Background

Litigation in this matter began on February 7, 2019, when ETC sued EM Pennsylvania, LLC (i.e. an Edgemarc affiliate) in the Court of Common Pleas of Allegheny County, Pennsylvania. (Complaint ¶ 83). A copy of the Complaint is attached as Exhibit A to the *Declaration of Gregory Graham In Support of the Motion of ETC Northeast Pipeline, LLC To Transfer the Action to the District of Delaware Pursuant to 28 U.S.C. § 1412 and/or 28 U.S.C.§ 1414(a)*, dated June 11, 2019 [Docket No. 8]. EM Pennsylvania brought counterclaims in that case against ETC for breach of a Gas Processing Agreement and related Individual Transaction Confirmations. (*Id*.; *see also* Exhibit A to the accompanying Declaration of Andrew Laurent Metz In Support of Motion to Dismiss (the "Metz Declaration"), Edgemarc's Answer, New Matter and Counterclaims).[1] That Pennsylvania litigation involves two central issues: (1) did ETC timely complete the Revolution System Pipeline?; and (2) was the September 2018 landslide a force-majeure act of God? *(See* Metz Declaration, Exhibit A). Edgemarc contends the Revolution System was not timely completed and that ETC is at fault for the landslide, which in turn, Edgemarc contends caused it damages because its gas couldn't be delivered. (*See id*.). Those are the same allegations—namely, that ETC caused the landslide and caused damage to Edgemarc—as in Goldman Sachs's Complaint here. (*See* Complaint ¶¶ 1, 6-13, 26-48, 62-84).

This case was filed on May 14, 2019, in the Supreme Court of the State of New York, county of New York. The next day, on May 15, Edgemarc filed for Chapter 11 bankruptcy in Delaware. (*See* Edgemarc's Voluntary Chapter 11 Bankruptcy Petition, Doc. No. 1, Case No. 19-

[1] "A court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." *Edo v. Martiny*, 15-CV-202 (CBA), 2017 WL 785653 (E.D.N.Y. Mar. 1, 2017 (quoting *Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66, 70 (2d Cir. 1998)).

11104-BLS, in the United States Bankruptcy Court for the District of Delaware). Edgemarc, again, alleges in the bankruptcy that the September 2018 landslide and litigation with ETC led to its Chapter 11 filing. (*See* Metz Declaration, Exhibit B, Declaration of Callum Streeter, Doc. No. 3, Case 19-11104-BLS, in the United States Bankruptcy Court for the District of Delaware, ¶¶ 6-12, 42-47).

All cases have now been removed to bankruptcy court. This case was removed on June 4, 2019, and the original litigation (i.e. the Pennsylvania case between Edgemarc and ETC) was removed on June 5, 2019, to the United States Bankruptcy Court for the Western District of Pennsylvania. (*See* ETC's Notice of Removal, Doc. No. 1, Case No. 2:19-cv-00662-NBF, in the United States District Court for the Western District of Pennsylvania).

## II. Argument

The Court must determine whether Goldman Sachs pleaded plausible, cognizable claims. *See Hollander v. Garrett*, 710 Fed. App'x 35, 36 (2d Cir. 2018). That means, the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

In deciding this Motion to Dismiss, the Court may also consider "any statements or documents incorporated in [the complaint] by reference, . . . and documents that the plaintiffs either possessed or knew about and upon which they relied in bringing the suit." *Rothman v. Gregor*, 220 F.3d 81, 88–89 (2d Cir. 2000) (citations omitted); *see also Carlin v. Davidson Fink LLP*, 852 F.3d 207, 212 (2d Cir. 2017) (stating "we may also consider any 'documents attached to the complaint as an exhibit or incorporated in it by reference.'" (citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)).

**A. Goldman Sachs's alleged contract includes a "sole and exclusive remedy" provision that precludes this suit for damages.**

The simplest basis for the Court to dismiss Goldman Sachs's claims is that the contracts sued upon preclude the relief sought. That is, in Section 3 of each commitment letter, Plaintiffs contractually agreed that if ETC "committed any material breach" of the commitment letters—as alleged in this case—their ***only*** available remedy would be to either postpone further investment or to not make any additional investment:

> 3. Conditions. The obligation of Sponsor to fund each Commitment on a Commitment Date shall be subject to the satisfaction of each of the following conditions as of such Commitment Date: (i) in respect of any Commitment, no notices of Force Majeure have been issued and not withdrawn and (ii) Gatherer shall not have committed any material breach of this letter agreement (including, for the avoidance of doubt, with respect to Gatherer's obligation to timely deliver a Project Status Notice in advance of each Commitment Date pursuant to Section 2(b)) or any of the GPA, ITC-101 or ITC-102 or if Gatherer shall have committed any such material breach, such material breach shall have been cured in all respects on or prior to the applicable Commitment Date. Notwithstanding anything herein to the contrary, Sponsor's sole and exclusive remedy for the failure of any of the conditions set forth in this Section 3 to be satisfied prior to the applicable Commitment Date shall be limited to the delay in making the applicable Commitment(s) described in Section 2 and the termination rights set forth in Section 12.

(*See, e.g.*, Metz Declaration Exhibit C, Sponsor ECL (Teachers) Letter at 3).[2] And virtually identical language is contained in each commitment letter sued upon. (*See* Metz Declaration Exhibits D-O).

---

[2] Note the "GPA" and "ITCs" referenced are those agreements that are ultimately at issue in the litigation between Edgemarc and ETC. (*See, e.g.*, Exhibit A). So to determine whether ETC was required to give notice of breach in this case, the fact-finder must first determine that a breach of the underlying agreements, in fact, occurred, which is the issue being litigated in the Pennsylvania case and in the Delaware bankruptcy.

Thus under the commitment letters:

1. ETC was required to provide Project Status Notices (*See* Metz Declaration Exhibit A, Section 2);

2. Those Project Status Notices were expressly incorporated into the "Conditions" of Goldman Sachs's obligation to fund (*See id.* Section 3); and

3. Any breach by ETC of the commitment letter—including the failure to provide a Project Status Notice, or provision of a defective notice—is subject to the exclusive remedy provision, which does not permit a suit for damages.

There can be no doubt that Goldman's contract claims allege a material breach of the commitment letters prior to the applicable commitment dates, tied to the "Project Status Notices," which makes the claims subject to the exclusive remedy provision:

**COUNT I**

**Breach of Contract**

85. The Equity Owners repeat and re-allege paragraphs 1 through 84 of this Complaint as if fully set forth herein.

86. As detailed above, Section 2 of the Equity Commitment Agreements required Energy Transfer to provide the Equity Owners with Project Status Notices prior to each Commitment Date certifying whether there had occurred a Project Delay — *i.e.*, whether "there has occurred any delay in the development, construction, or completion of the Gathering System described in ITC-101 that will delay the In-Service Date beyond July 1, 2018."

87. Energy Transfer breached this contractual requirement on each of January 18, 2018, March 2, 2018, and April 16, 2018 by providing inaccurate Project Status Notices certifying that there was no Project Delay.

Complaint ¶¶ 85-87.

Under the commitment letters, upon a material breach, Goldman Sachs was entitled only to: (1) delay additional investments as set forth in Section 2; or (2) not make additional

investments as set forth in Section 12.[3] (*See, e.g.,* Metz Declaration Exhibit C, Section 3). Accordingly, Plaintiffs' claims in this case should be dismissed because Plaintiffs bargained for and agreed to an exclusive remedy.

This issue may be decided as a matter of law, because New York courts enforce contractual exclusive remedies provisions. For example, in *Ambac Assur. Corp. v. EMC Mortg. LLC*, the court enforced a "sole and exclusive" remedy provision, despite the plaintiff's complaints that it would be left "'without a remedy' at all for defendants' alleged contract breaches*."* 121 A.D.3d 514, 520 (2014). In reaching its decision, the court found that "However limited [the plaintiff's] remedies may be, they are what the plain language of the agreements provide. [The plaintiff] is not entitled to rewrite the agreements simply because it dislikes, in hindsight, the agreements' terms." *Id*.

Similarly, in *Deutsche Lufthansa AG v. The Boeing Co.*, the court found that a limitation of remedies was effective when *"*from the face of the service agreement, it is clear that [the parties] explicitly agreed to limit their remedies to those enumerated in § 10.3.2 when they used full capitalization in the text of the contract to state that "the above obligations shall be the sole and exclusive remedy for any default condition, except as may be provided elsewhere in this agreement." 06 CV 7667 (LBS), 2006 WL 3155273, at *4 (S.D.N.Y. Oct. 30, 2006)

---

[3] Section 12 provides:

> Termination. This letter agreement, and all obligations hereunder including the obligation of Sponsor to fund the Commitment subject to the terms and conditions herein, will terminate automatically and immediately upon the earliest to occur of (a) the payment in full of the Commitment, (b) the termination of any of the GPA, ITC-101, ITC-102, the Other Commitment Letter or the EM Holdings Capital Contribution Letter in accordance with their respective terms, (c) any assertion by Gatherer, its Affiliates or any of its or their respective officers, directors or representatives in any litigation or other proceeding (under any theory at law or in equity) that (i) the Sponsor's liability under or in respect of this letter agreement, any of the transactions contemplated hereby and/or any related matters is not limited to the amount of the Commitment, (ii) the limitation of such liability to the amount of the Commitment is illegal, invalid or unenforceable, in whole or in part or (iii) the Sponsor has any liability under any of the GPA, ITC-101, ITC-102, the Other Commitment Letter or the EM Holdings Capital Contribution Letter, any of the transactions contemplated thereby and/or any related matters other than its express obligations hereunder, and (d) January 1, 2019.

(capitalization removed).

The commitment letters at issue were just that—a commitment by Goldman Sachs to fund Edgemarc's development of natural gas production. ETC, in turn, was obligated to provide Project Status Notices as a condition precedent to Goldman Sachs's funding. But the parties expressly agreed that Goldman Sachs's ***only remedies*** for ETC's breach were to ***delay*** or ***stop*** funding. Goldman Sachs's suit based on ETC's allegedly defective Project Status Notices is limited to the bargained-for, limited remedies to which it agreed. Therefore, Goldman Sachs's claims for damages based on a breach of contract must me dismissed as a matter of law.

### B. Moreover, Goldman's claims fail as a matter of law, because any injury was to Edgemarc, not Goldman Sachs.

The express limitation of liability in the commitment letters makes sense, because it is entirely untenable that ETC could be responsible to Goldman Sachs for any losses that ***Edgemarc sustained.*** That is, Goldman Sachs can't plausibly seek recovery for the same injury as alleged by Edgemarc.[4] Or stated differently, even aside from the express limitation of liability in the commitment letters, Goldman's claims must be dismissed because Goldman cannot recover damages for harm to Edgemarc. So while the commitment letters should be dispositive, even if the Court looks outside the terms of those letters, the result is the same.

As explained in *In re REFCO Inc. Sec. Litig.*, a plaintiff's standing is fundamental to the legitimacy of the plaintiff's claims. 07 MDL 1902(JSR), 2010 WL 1404198 (S.D.N.Y. Mar. 31, 2010). That is, when two plaintiffs—particularly when one plaintiff is an investor in the other—

[4] The corollary to this is that if Goldman Sachs were found to have standing to pursue its claims based on the alleged harms to Edgemarc, then Goldman Sachs's claims must, nonetheless, be dismissed under Federal Rule of Civil Procedure 12(b)(7). That is, if Goldman Sachs is permitted to litigate the alleged injuries to Edgemarc, then Edgemarc is an indispensable party under Rule 19, because —regardless if joinder is feasible—Edgemarc would absolutely be prejudiced, judgment in this matter would not be adequate without Edgemarc, and Plaintiffs have an adequate remedy by either allowing Edgemarc to pursue its pending claims (and reaping the benefits as investors) or intervening in the other pending litigation. Accordingly, although the Court need not reach this issue if Plaintiffs' claims are dismissed, Defendant moves to dismiss under Rule 12(b)(7) and Rule 19 FRCP, if Plaintiffs are permitted to ligate Edgemarc's contract and injuries.

are "seeking the same recovery . . . . [t]hat is the classic double recovery that the standing doctrine works to avoid." *Id*. (citing *In re Van Dresser Corp.*, 128 F.3d 945, 949 (6th Cir. 1997) (finding that a creditor in bankruptcy cannot sue for damages resulting from the harm to the bankrupt corporation)). Simply put, "The bottom line is that the damages sought by the Investors are *part* of the recovery sought by [the company invested in]. So the risk of double recovery applies to all of the damages sought by the Investors." *Id.*

The questions, then, are: (1) who was injured?; and (2) who is entitled to the benefit of any recovery? *See generally Debussy LLC v. Deutsche Bank AG*, 242 Fed. App'x 735, 736–37 (2d Cir. 2007). Here, assuming all well-pleaded facts are true, the answer to both is ***Edgemarc***, not Goldman Sachs.

If there were any doubt, the following allegations from Goldman Sachs's Complaint show that the alleged injury is to Edgemarc:

- ***EdgeMarc*** has been unable to satisfy the volume requirements of its "take or pay" natural gas delivery contracts with the major interstate pipeline operators because the Gathering System – which was supposed to deliver ***EdgeMarc's*** natural gas to the interstate pipeline system – is still not in service. Failure to satisfy those volume requirements has ***cost EdgeMarc*** more than a million dollars every month. (Complaint ¶ 13).

- Between 2014 and 2018, ***EdgeMarc*** entered into [Long Haul Contracts]. The Long Haul Contracts are "take or pay" contracts, under which the shipper of natural gas (here, ***EdgeMarc***) contracts for reserved capacity on the operator's interstate pipeline, and is charged for that capacity regardless of whether or not it actually delivers any natural gas to the pipeline. (*Id*. ¶ 30).

- Under the Long Haul Contracts, ***EdgeMarc is obligated*** to pay millions of dollars every month for its reserved capacity on the interstate pipelines. (*Id*. ¶ 31).

- All parties knew that, absent completion of the Gathering System by July 2, 2018, ***EdgeMarc would be at risk*** on its Long Haul Contract with [ETP], since it was expected that EdgeMarc would

start incurring significant fees on that contract around that time. If ***EdgeMarc's gas*** did not make it to the Rover interstate pipeline by that time, it would incur substantial losses on the Rover and other Long Haul Contracts. (*Id*. ¶ 39).

- Since the Pipeline Explosion, rather than promptly acknowledging its mistakes and seeking to remedy the resulting harms, Energy Transfer has made the situation significantly ***worse for EdgeMarc*** and its Equity Owners. (*Id*. ¶ 78).

- While Energy Transfer was trying to deflect blame for the failure of its pipeline system, ***EdgeMarc*** and its Equity Owners were absorbing significant losses. Despite the explosion, ***EdgeMarc*** remained committed to "take or pay" specified volumes of natural gas under its Long Haul Contracts. But as a result of the Pipeline Explosion, it could not deliver natural gas from Butler County to the interstate pipelines and ***EdgeMarc incurred penalties*** on the Long Haul Contracts of over a million dollars per month. (*Id*. ¶ 81).

- On January 30, 2019, ***EdgeMarc*** Pennsylvania notified Energy Transfer that it was invoking its rights under the GPA to have Energy Transfer gather and transport a portion of its gas in Butler County to a third-party processor. Energy Transfer refused to accept this nomination of gas. (*Id*. ¶ 82).

- Although the Pipeline Explosion occurred over eight months ago, Energy Transfer has failed to fix the problems with the Revolution System. ***EdgeMarc's natural gas in Pennsylvania remains shut in*** – a direct result of Energy Transfer's inability to flow ***EdgeMarc's gas*** to the interstate pipeline system and its unwillingness to flow any of ***EdgeMarc's gas*** to an available third-party processor. (*Id*. ¶ 84).

The crux of Goldman Sachs's case is clear: (1) Goldman Sachs invested in Edgemarc; and (2) the 2018 landslide allegedly injured Edgemarc. So there can be no mistake—this case is about an alleged injury to Edgemarc. Specifically, this case is about Edgemarc's ability to produce and deliver its natural gas under its agreements with ETC.

Goldman Sachs's lack of standing is critically important here, because Edgemarc's Chapter 11 bankruptcy filing created an estate that has the right and obligation to pursue claims

and causes of action for the ratable benefit of all creditors, equity holders, and other parties in interest. *See* 11 U.S.C. Sec. 541, et. seq. Case law is clear that only a debtor—and not a debtor's creditors—may pursue a general claim (i.e. a claim with no particularized injury arising from it). *St. Paul Fire & Marine Ins. Co*., 884 F.2d at 701. In fact, once in bankruptcy, only a debtor has standing to pursue a derivative claim, because the claim is property of the estate. *See In re WorldCom, Inc*., 323 B.R. 844, 857 (Bankr. S.D.N.Y. 2005). Stated differently, only the debtor can bring claims "that 'arise . . . . from harm done to the estate.'" *In re Bernard L. Madoff Inv. Sec. LLC*, 740 F.3d 81, 89 (2d Cir. 2014). So when a creditor seeks relief against third parties that allegedly pushed the debtor into bankruptcy, the creditor is impermissibly asserting a derivative claim that arises from harm done to the estate. *See In re Bernard L. Madoff Inv. Sec. LLC*., 721 F.3d 54, 70 (2d. Cir. 2013). And in this case, Goldman Sachs's Complaint tracks the same allegations that Edgemarc alleges pushed it into bankruptcy. (*Compare* Exhibit B, ¶¶ 6-12, 42-47, *with* Complaint ¶¶ 1, 6-13, 26-48, 62-84.).

Therefore, even assuming Goldman Sachs's allegations are true, it cannot state a plausible claim for relief. Goldman Sachs's mere investment in Edgemarc does not give it independent standing to sue ETC for these alleged harms to Edgemarc—precisely the same harms that allegedly pushed Edgemarc into bankruptcy—and all claims in this case must be dismissed. Every dollar Goldman is successful here in recovering means there is one less dollar for the bankrupt estate—or ETC will pay the same dollar twice.

### C. Plaintiffs' tort claims are impermissible re-pleadings of contract claim.

When a contract exists, it establishes the rights and duties of the parties regarding the subject matter or the contract. Here the only alleged duty is premised on Plaintiffs' commitment letters. Because Goldman Sachs pleaded a purely contractual relationship, its tort claims must be

dismissed.

***1. Plaintiffs' unjust enrichment claim must be dismissed because a valid contract exists, and Plaintiffs pleaded no enrichment to ETC.***

When a plaintiff alleges a valid, enforceable contract, and the parties' relationship is governed by that contract, the plaintiff cannot plead a plausible claim for unjust enrichment. *See Document Sec. Sys., Inc. v. Coupons.com, Inc.*, 11-CV-6528 CJS, 2012 WL 3597769, at *5 (W.D.N.Y. Aug. 20, 2012); *Pollak v. Bank of Am.*, 12 CV 7726 VB, 2013 WL 4799264, at *3 (S.D.N.Y. Aug. 27, 2013); *Nelson v. MillerCoors, LLC*, 246 F. Supp. 3d 666, 679 (E.D.N.Y. 2017) ("even pleaded in the alternative, claims for unjust enrichment will not survive a motion to dismiss where plaintiffs fail to explain how their unjust enrichment claim is not merely duplicative of their other causes of action."); s*ee also Beth Israel Med. Ctr. v. Horizon Blue Cross and Blue Shield of N.J., Inc.*, 448 F.3d 573, 587 (2d Cir. 2006) ("all claims for unjust enrichment are dismissed as precluded under New York law and inconsistent with [plaintiff's] own pleadings because we have found valid, enforceable contracts between the parties").[5] Plaintiffs pleaded valid, enforceable contracts that govern the parties' relationship, which means any duties are contractual, not tort-based.

Additionally, a plaintiff's prima facie case must show: "(1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution."

[5] This is not a novel result. *See, e.g., New Paradigm Software Corp. v. New Era of Networks, Inc.*, 107 F. Supp. 2d 325, 329 (S.D.N.Y. 2000) (where "both parties agree that a valid and enforceable contract exists between them, [a party] may not plead the quasi-contract theory of unjust enrichment."); *Fishman v. Philadelphia Fin. Life Assurance Co.*, 11 Civ. 1283, 2016 WL 2347921, 2016 U.S. Dist. LEXIS 58862 (S.D.N.Y. May 3, 2016) (motion to dismiss unjust enrichment claim granted where the fee dispute was governed by various insurance policies and a "claim for unjust enrichment may only survive as an alternative theory of liability when the existence of the contract is in dispute."); *Global Funding Group. LLC v. 133 Community Road, Ltd.*, 251 F. Supp. 3d 527 (E.D.N.Y. 2017) (dismissing unjust enrichment claim where defendants did not dispute the existence of a valid and enforceable contract and therefore the unjust enrichment claim was "directly duplicative of the breach of contract claim"); *Donchatz v. HSBC Bank United States, N.A.*, 14-CV-194, 2015 WL 860760, 2015 U.S. Dist. LEXIS 24136 (W.D.N.Y. Feb. 27, 2015) ("because there clearly exists a contractual agreement governing the obligations of plaintiff and . . . defendants at issue in this case, plaintiff cannot maintain a plausible claim for unjust enrichment").

*ExamWorks, Inc. v. Soltys*, 17-CV-80, 2017 WL 4680410 (W.D.N.Y. Oct. 18, 2017) (citing *Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir. 2000)). So a claim for unjust enrichment must be dismissed when, for example, "there is no specific or quantifiable benefit, such as monetary gain, received by defendant as a result [of] these actions." *Id.* (citing *Steinbeck v. Steinbeck Heritage Foundation*, 400 Fed. App'x 572 (2d Cir. 2010) ("we identify no benefit derived by [plaintiffs] at [defendant's] expense and, consequently, conclude that plaintiffs' claims for unjust enrichment . . . were properly dismissed without merit."); *Chevron Corp. v. Donziger*, 871 F. Supp. 2d 229, 260 (S.D.N.Y. 2012) ("A complaint does not state a cause of action in unjust enrichment if it fails to allege that defendant received something of value which belonged to plaintiff.")).

In its Complaint, Goldman Sachs failed to plead facts showing a plausible benefit to Defendant ETC. Rather, Goldman Sachs's beneficiary was Edgemarc:

- [T]he Equity Owners committed to invest an additional $150 million in EdgeMarc to allow the company to further develop its natural gas properties in Butler County, Pennsylvania. The Equity Owners would make $50 million available in November 2017, and agreed to invest an additional $100 million in 2018. Pls.' Compl. ¶ 2.

- [O]n or around February 1, 2018, the Equity Owners funded their first $33.33 million Commitment. Those funds were then made available to EdgeMarc Pennsylvania. *Id.* ¶ 57.

- [T]he Equity Owners funded their second and third Commitments on or around March 15, 2018 and April 30, 2018, respectively. Each of these Commitments was for $33.33 million and those funds too were made available to EdgeMarc Pennsylvania. *Id.* ¶ 58.

Plaintiffs' unjust enrichment claim must be dismissed because the equitable claim is not cognizable when a valid contract is pleaded. Moreover, Plaintiffs failed to plead a plausible prima facie benefit to ETC, which means Plaintiffs' unjust enrichment claims fail as a matter of law.

***2. Plaintiffs' negligent misrepresentation claim fails as a matter of law because it is a regurgitated breach of contract claim.***

"Under New York law 'a simple breach of contract is not to be considered a tort unless a legal duty independent of the contract itself has been violated.'" *LaSalle Bank Nat. Assoc. v. Citicorp Real Estate Inc.*, 02 CIV. 7868 (HB), 2003 WL 1461483, at *3–4 (S.D.N.Y. Mar. 21, 2003) (quoting *Clark–Fitzpatrick, Inc. v. Long Island R.R.*, 70 N.Y.2d 382, 389 (1987)). To state a plausible claim for negligent misrepresentation, the plaintiff must plead a separate, independent duty that "must spring from circumstances extraneous to, and not constituting elements of, the contract, although it may be connected with and dependent upon the contract." *Id.*

Simply put, Goldman Sachs failed to plead that ETC had any independent tort duty. Rather, the parties' entire relationship was spelled out in commitment letters—as is expected among sophisticated investors. Without an independent, non-contractual duty, there can be no negligent misrepresentation. Plaintiffs' negligent misrepresentation claims must, therefore, be dismissed.

## III. Conclusion

Under a series of commitment letters, Goldman Sachs invested in third-party bankruptcy debtor Edgemarc. And ETC agreed to provide periodic Project Status Notices with the express limitation that Goldman Sachs would have no recourse against ETC.

The exclusive remedy provision in the commitment letters leads to a common-sense result, because any lost investment by Plaintiffs is an injury to Edgemarc, which gives rise to claims by Edgemarc, not Goldman Sachs. Moreover, Edgemarc actually brought its own claims, and those are now subject to the bankruptcy court's automatic stay. So these claims by Goldman Sachs are not about righting a wrong; rather they're an unjust attempt to obtain a double recovery and avoid the mandatory bankruptcy process.

In sum, Goldman Sachs's claims must be dismissed, because: (1) the contractual exclusive remedies provision controls; (2) Goldman Sachs does not have standing to assert these claims; and (3) the commitment letters govern the parties' relationships, and no tort remedy is cognizable.

Dated: June 11, 2019

PACHULSKI STANG ZIEHL & JONES LLP

*/s/ Beth E. Levine*

Laura Davis Jones (*pro hac vice* application to be filed)
Beth E. Levine
PACHULSKI STANG ZIEHL & JONES LLP
780 Third Avenue, 34th Floor
New York, NY 10017
Telephone: (212) 561-7700
Facsimile: (212) 561-7777
Email: ljones@pszjlaw.com
blevine@pszjlaw.com

and

Michael P. Lynn (*pro hac vice* application to be filed)
Chris Patton
John Adams (*pro hac vice* application to be filed)
LYNN PINKER COX & HURST, L.L.P.
2100 Ross Avenue, Suite 2700
Dallas, Texas 75201
Telephone: (214) 981-3800
Facsimile: (214) 981-3839
Email: mlynn@lynnllp.com
cpatton@lynnllp.com
jadams@lynnllp.com

*Counsel to ETC Northeast Pipeline, LLC*