# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>EDGEMARC ENERGY HOLDINGS, LLC, *et al.*,<br><br>                *Debtors*. | Chapter 11<br><br>Case No. 19-11104-JTD |
| GSCP VI EDGEMARC HOLDINGS, L.L.C., GSCP VI PARALLEL EDGEMARC HOLDINGS, L.L.C., WSEP AND BRIDGE 2012 EDGEMARC HOLDINGS, L.L.C., and EM HOLDCO LLC,<br><br>                *Plaintiffs*,<br><br>                v.<br><br>ETC NORTHEAST PIPELINE, LLC,<br><br>                *Defendant*. | Adv. Pro. No. 19-50269-JTD |

## EQUITY OWNERS' MEMORANDUM OF LAW
## IN SUPPORT OF MOTION FOR ABSTENTION AND REMAND

Emil A. Kleinhaus (*admitted pro hac vice*)
Carrie M. Reilly (*pro hac vice pending*)
S. Christopher Szczerban (*pro hac vice pending*)
Corey J. Banks (*pro hac vice pending*)
Michael H. Cassel (*admitted pro hac vice*)
WACHTELL, LIPTON, ROSEN & KATZ
51 West 52nd Street
New York, New York  10019
Telephone:  (212) 403-1000
Facsimile:  (212) 403-2000
EAKleinhaus@wlrk.com
CMReilly@wlrk.com
SCSzczerban@wlrk.com
CJBanks@wlrk.com
MHCassel@wlrk.com

Patrick A. Jackson (Del Bar No. 4976)
DRINKER BIDDLE & REATH LLP
222 Delaware Avenue, Suite 1410
Wilmington, Delaware  19801-1621
Telephone:  (302) 467-4200
Facsimile:  (302) 467-4201
Patrick.Jackson@dbr.com

*Attorneys for Plaintiffs GSCP VI EdgeMarc Holdings, L.L.C., GSCP VI Parallel EdgeMarc Holdings, L.L.C., WSEP and Bridge 2012 EdgeMarc Holdings, L.L.C., and EM Holdco LLC*

Dated:  July 30, 2019

# **TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ...................................................................................................1

NATURE AND STAGE OF PROCEEDINGS ..............................................................................3

SUMMARY OF ARGUMENT ......................................................................................................4

STATEMENT OF THE CASE.......................................................................................................5

ARGUMENT .................................................................................................................................7

    I.    NO CORE BANKRUPTCY JURISDICTION EXISTS IN THIS CASE. ....................................................................................................7

        A.    The Equity Owners' claims "arise under" New York law, not the Bankruptcy Code. .....................................................7

        B.    The Equity Owners' claims are independent of, and do not "arise in," EdgeMarc's bankruptcy. ...........................................8

    II.    SUBSTANTIAL QUESTIONS EXIST AS TO "RELATED TO" JURISDICTION. ..............................................................................................10

    III.    EVEN IF "RELATED TO" JURISDICTION EXISTS, THIS COURT MUST ABSTAIN FROM ADJUDICATING THE EQUITY OWNERS' CLAIMS. ......................................................................12

CONCLUSION.............................................................................................................................14

# **TABLE OF AUTHORITIES**

Page

**Cases**

*Aldinger* v. *Howard*,
   427 U.S. 1 (1976) .................................................................................................... 10

*Allstate Ins. Co.* v. *Ace Sec. Corp.*,
   2011 WL 3628852 (S.D.N.Y. Aug. 17, 2011) ........................................................ 14

*Bank of Am., N.A.* v. *Lightstone Holdings, LLC (In re Extended Stay, Inc.)*,
   418 B.R. 49 (Bankr. S.D.N.Y. 2009) ..................................................................... 8-9

*Celotex Corp.* v. *Edwards*,
   514 U.S. 300 (1995) ................................................................................................ 10

*Citigroup Inc.* v. *AHW Inv. P'ship*,
   140 A.3d 1125 (Del. 2016) ....................................................................................... 9

*Fried* v. *Lehman Bros. Real Estate Assocs. III, L.P.*,
   496 B.R. 706 (S.D.N.Y. 2013) ................................................................................ 14

*GE Oil & Gas, LLC* v. *Turbine Generation Servs., LLC*,
   2019 WL 2008575 (S.D.N.Y. May 7, 2019) ...................................................... 13-14

*Halper* v. *Halper*,
   164 F.3d 830 (3d Cir. 1999) ...................................................................................... 7

*In re Bernard L. Madoff Inv. Sec. LLC*,
   561 B.R. 334 (Bankr. S.D.N.Y. 2016) ..................................................................... 10

*In re Fairfield Sentry Ltd. Litig.*,
   458 B.R. 665 (S.D.N.Y. 2011) ............................................................................. 8 n.2

*In re Housecraft Indus. USA, Inc.*,
   310 F.3d 64 (2d Cir. 2002) ................................................................................... 8 n.2

*In re JMO Wind Down, Inc.*,
   2018 WL 1792185 (Bankr. D. Del. Apr. 13, 2018) .............................................. 2 n.1

*In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*,
   488 F.3d 112 (2d Cir. 2007) ................................................................................ 10-11

*In re Nat'l Football League Players Concussion Injury Litig.*,
   775 F.3d 570 (3d Cir. 2014) ...................................................................................... 7

*In re New 118th LLC*,
  396 B.R. 885 (Bankr. S.D.N.Y. 2008) .................................................................................... 9

*In re Riverside Nursing Home*,
  144 B.R. 951 (S.D.N.Y. 1992) ............................................................................................... 8

*In re Touch Am. Holdings, Inc.*,
  401 B.R. 107 (Bankr. D. Del. 2009) ................................................................................. 2 n.1

*In re Winstar Commc'ns, Inc.*,
  284 B.R. 40 (Bankr. D. Del. 2002) ...................................................................................... 12

*NAF Holdings*, LLC v. *Li & Fung (Trading) Ltd.*,
  118 A.3d 175 (Del. 2015) ...................................................................................................... 9

*Nuveen Mun. Trust ex rel. High Yield Bond Fund* v. *WithumSmith Brown, P.C.*,
  692 F.3d 283 (3d Cir. 2012) ............................................................................................ 10 n.3

*Pacor, Inc.* v. *Higgins*,
  743 F.2d 984 (3d Cir. 1984) ........................................................................................... 10, 12

*Post Inv'rs LLC* v. *Gribble*,
  2012 WL 4466619 (S.D.N.Y. Sept. 27, 2012) ................................................................ 10 n.3

*Reunion Indus., Inc.* v. *Steel Partners II, L.P.*,
  410 B.R. 170 (W.D. Pa. 2008) ............................................................................................... 8

*Stoe* v. *Flaherty*,
  463 F.3d 209 (3d Cir. 2006) ....................................................................................... 7, 8, 13

*Susquehanna Commercial Fin., Inc.* v. *Herdocia*,
  2007 WL 137837 (E.D. Pa. Jan. 16, 2007) ....................................................................... 7-8, 9

**Statutes**

28 U.S.C. § 157 .............................................................................................................................. 7

28 U.S.C. § 1334 .................................................................................................................... passim

**PRELIMINARY STATEMENT**

This motion is brought to urge the Court to abstain from adjudicating the merits of plaintiffs' claims — and to remand the action to New York state court — assuming the Court concludes (as it should) that the causes of action in plaintiffs' complaint are *not* property of the debtors' estates. Plaintiffs are not averse to being in this forum and, indeed, consented to transfer of this action to this Court to determine the threshold issue of standing. However, once the Court determines that plaintiffs have standing to pursue the causes of action at issue, substantial questions exist as to this Court's jurisdiction over those causes of action. Accordingly, rather than adjudicating the merits of plaintiffs' claims, this Court should remand the action to the New York court where it was commenced; indeed, in these circumstances, abstention is mandatory under 28 U.S.C. § 1334(c)(2).

This is a state-law contract and tort dispute between non-debtors. The plaintiffs — investment companies affiliated with Goldman Sachs & Co. LLC or Ontario Teachers' Pension Plan Board (the "Equity Owners") — are equity owners of the debtor, EdgeMarc Energy Holdings, LLC ("EdgeMarc"). The defendant, ETC Northeast Pipeline, LLC ("Energy Transfer"), is an energy company that designs, builds and operates pipelines. Energy Transfer made representations *directly* to the Equity Owners relating to a "Gathering System" that Energy Transfer committed to build in Pennsylvania to gather and deliver EdgeMarc's gas to market. This lawsuit is predicated on those *direct* representations, and seeks redress under theories of breach of contract, unjust enrichment and negligent misrepresentation for the harms that Energy Transfer caused to the Equity Owners.

The crux of the Equity Owners' complaint is that Energy Transfer, through numerous representations, induced the Equity Owners to commit new capital to EdgeMarc so that EdgeMarc would transport gas through Energy Transfer's Gathering System. Specifically, in

Equity Commitment Agreements (the "Commitment Agreements"), Energy Transfer agreed to certify to the Equity Owners, prior to each new round of funding, that there was no delay in the development, construction, or completion of the Gathering System. In reliance on three separate certifications, the Equity Owners funded $100 million of new equity financing. The Equity Owners also funded an additional $50 million based on separate direct assurances from Energy Transfer that the system would be ready and operational by July 1, 2018. It is now clear, however, that none of the certifications — and none of the direct assurances — were true and accurate. As a result, the Equity Owners have suffered significant damages.

In removing this action to federal court, Energy Transfer asserted that "Plaintiffs' Complaint arises in, arises under or otherwise is related to" EdgeMarc's bankruptcy. Notice of Removal ¶ 7, D.I. 1. The primary argument in support of that assertion, and a primary ground for Energy Transfer's motion to dismiss, is that "the Complaint seeks to adjudicate potential claims by [the] estate of Debtor EdgeMarc against [Energy Transfer]" and that Equity Owners' claims are "derivative[ ]" of those of the debtor. *Id.* ¶ 7(g)-(i). The Equity Owners consented to the transfer of this action to this Court because they agree that this Court, as the Court presiding over EdgeMarc's bankruptcy estate, should determine whether the causes of action asserted by the Equity Owners are property of the estate or property of the Equity Owners.[1]

As set forth in the Equity Owners' Opposition to Energy Transfer's Motion to Dismiss, filed herewith, the causes of action at issue are manifestly *not* property of the EdgeMarc estate and are *not* derivative. Instead, the causes of action are direct claims belonging to the Equity

---

[1] As Judge Shannon explained in *In re JMO Wind Down, Inc.*, determining whether certain property is within the definition of property of the estate — including whether claims are direct or derivative in nature — falls within this Court's jurisdiction. 2018 WL 1792185, at *5-6 (Bankr. D. Del. Apr. 13, 2018); *accord, e.g.*, *In re Touch Am. Holdings, Inc.*, 401 B.R. 107, 117 (Bankr. D. Del. 2009).

2

Owners — rooted in contractual and other obligations between non-debtors — regardless of whether the Debtors may have other claims against Energy Transfer.

Once the Court rules that the causes of action in the Complaint belong to the Equity Owners, there is no basis to conclude that this proceeding falls within this Court's "core" jurisdiction. Rather, jurisdiction for this Court to adjudicate anything beyond the threshold question of claim ownership would depend on a theory that the causes of action are "*related to*" EdgeMarc's bankruptcy proceeding.

That jurisdiction, however, is tenuous at best. Indeed, because this Court's jurisdiction is at most predicated on the "related to" prong of the jurisdictional test, the Court is *required* to abstain from adjudicating the merits of the Equity Owners' claims and instead has to remand the matter to state court. The Equity Owners file this motion to ensure that the court that hears and determines the merits of their causes of action has unquestioned jurisdiction and can enter a final judgment.

## NATURE AND STAGE OF PROCEEDINGS

On May 14, 2019, the Equity Owners sued Energy Transfer in the Commercial Division of the Supreme Court of the State of New York, New York County, asserting claims for breach of contract, unjust enrichment and negligent misrepresentation. D.I. 1, Ex. A ("Compl.") ¶¶ 85-107. State court in New York is the proper forum for the Equity Owners' suit because, among other things, their contracts with Energy Transfer included a forum selection clause providing for the "exclusive jurisdiction of any U.S. federal or New York State court sitting in the County of New York, Borough of Manhattan." *Id.* ¶ 25; Metz Decl., Exs. N, O § 8, D.I. 11-1.

On June 4, 2019, Energy Transfer removed this action to the United States District Court for the Southern District of New York, where it was referred to the United States Bankruptcy Court in that district, then transferred to this Court on July 1, 2019. D.I. 1, 2, 26, 27. In

consenting to transfer to this Court, all parties "fully reserve[d] and [did] not waive all rights, defenses and arguments, including Plaintiffs' right to seek remand or abstention in favor of the New York State Court and all parties' rights, defenses and arguments in connection with the Motion to Dismiss, discovery and all other matters." D.I. 26. In this Court, the parties agreed to a briefing schedule on Energy Transfer's Motion to Dismiss. D.I. 31. The Equity Owners' opposition to the Motion to Dismiss has been submitted concurrently with this filing.

The threshold issue presented by the Motion to Dismiss is *who owns* the causes of action brought by the Equity Owners. As demonstrated in the Equity Owners' opposition brief, those causes of action are owned by the Equity Owners and are not property of the debtors' estate; thus, there is no basis for dismissal for lack of standing. The Equity Owners have filed this additional motion to ensure that a court of competent jurisdiction will adjudicate the merits of the causes of action they have brought. The Equity Owners respectfully request that the Court consider this motion *after* deciding that the causes of action are not derivative of the estate but *before* reaching the merits of the dispute, including any other issues raised by the Motion to Dismiss.

## SUMMARY OF ARGUMENT

1. No core bankruptcy jurisdiction exists in this case. The Equity Owners' claims do not arise under the Bankruptcy Code or in EdgeMarc's chapter 11 case. *See* Point I, *infra*.

2. Substantial questions exist regarding whether this Court has "related to" jurisdiction over this action. *See* Point II, *infra*.

3. Even if "related to" jurisdiction were to exist, 28 U.S.C. § 1334(c) requires abstention where the court in which the case was originally commenced is capable of timely adjudication. Thus, the Court should abstain from adjudicating this action. *See* Point III, *infra*.

## STATEMENT OF THE CASE

Since 2011, the Equity Owners have invested approximately $850 million in EdgeMarc, an oil and gas exploration and production company. Compl. ¶¶ 1, 26. The most recent funding — $150 million — was delivered in installments pursuant to agreements entered into in November 2017 (the "2017 Agreements"), including the Commitment Agreements that the Equity Owners and Energy Transfer signed. *Id.* ¶¶ 40, 49. Securing that additional funding from the Equity Owners was Energy Transfer's "number one priority" in the 2017 negotiations. *Id.* ¶ 49.

In connection with the 2017 funding, the Equity Owners sought assurances from Energy Transfer regarding the construction of the Gathering System. Energy Transfer provided those assurances, both at meetings in its Pennsylvania offices (*id.* ¶ 38), and in writing, via notices (called "Project Status Notices") required by the Commitment Agreements (*id.* ¶¶ 57-59). Specifically, in each Project Status Notice, Energy Transfer provided a "written certification" that there was no "Project Delay," meaning "any delay in the development, construction, or completion of the Gathering System . . . that will delay the In-Service Date" — the date the Gathering System was to be "completed and placed in commercial service" — "beyond July 1, 2018." *Id.* ¶¶ 4, 57-59.

In reliance on Energy Transfer's assurances, the Equity Owners made available $50 million in funding upon signing the 2017 Agreements. *Id.* ¶¶ 3, 49. Additionally, following receipt of Project Status Notices from Energy Transfer certifying on January 18, 2018, March 2, 2018 and April 16, 2018 that there was no "Project Delay," the Equity Owners provided $100 million in further funding. *Id.* ¶¶ 57-59. Energy Transfer never notified the Equity Owners of "any event reasonably likely to cause a delay," as separately required by the Commitment Agreements. *Id.* ¶ 59.

5

On the morning of September 10, 2018, following a heavy rainstorm, a slope traversed by a segment of Energy Transfer's pipeline failed in a landslide, causing the pipeline to rupture and resulting in an explosion and flash fire (the "Pipeline Explosion"). *Id.* ¶ 62. These events, as well as other facts since discovered and set forth in the Complaint, make clear that there were serious design and/or construction flaws in the pipeline system and that the Gathering System was not compliant with applicable law, capable of gathering and transporting EdgeMarc's gas, or ready for commercial service. *Id.* ¶¶ 63, 65. As shown in the Complaint, in the aftermath of the Pipeline Explosion, regulators in Pennsylvania and beyond have cited Energy Transfer for an extraordinary array of legal violations concerning the Gathering System, and Energy Transfer has been required to enter into a consent order and pay civil penalties. *Id.* ¶¶ 67-68. Energy Transfer has also been rebuked by the Governor of Pennsylvania for failing to "respect our laws" and by the Pennsylvania Department of Environmental Protection (the "DEP") for failing to comply with DEP's orders. *Id.* ¶¶ 71-72.

Energy Transfer's conduct has harmed individuals and companies *other than* the Equity Owners in different ways. The Pipeline Explosion burned people's homes, damaged power lines and forced evacuations. *Id*. ¶¶ 6, 62. Energy Transfer harmed the environment, as evidenced by more than 780 violations issued by the DEP and the public rebuke by the Governor of Pennsylvania. *Id.* ¶¶ 67-69. It also disrupted EdgeMarc's operations and "shut in" its gas. *Id.* ¶ 84. But, as shown in the Complaint, the Equity Owners have their own independent claims based on the independent direct harms they have suffered, including funding $150 million and the loss of value to the remainder of their investment as a result of investing that money in Pennsylvania rather than pursuing an alternate strategy and investing in Ohio. *Id*. ¶¶ 85-107.

Additional factual background is set forth in the Complaint and in the Equity Owners' Opposition to Energy Transfer's Motion to Dismiss.

## ARGUMENT

Federal courts have "jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. §§ 157, 1334(b). As the removing party, Energy Transfer bears the burden of establishing bankruptcy court jurisdiction. *In re Nat'l Football League Players Concussion Injury Litig.*, 775 F.3d 570, 574 (3d Cir. 2014).

As set forth in the Equity Owners' Opposition to Energy Transfer's Motion to Dismiss, the causes of action in the Complaint are ***not*** property of EdgeMarc's estate; thus, they do not "arise in" EdgeMarc's bankruptcy proceeding. They also do not arise "under" the Bankruptcy Code. And despite the breadth of "related to" jurisdiction, it is doubtful that this action brought by a non-debtor seeking damages from another non-debtor (its contractual counterparty) has even a "conceivable effect" on the bankruptcy estate. But even if some such effect may exist, this action should be remanded to the New York state court based on the mandatory abstention requirement of 28 U.S.C. § 1334(c).

## I. NO CORE BANKRUPTCY JURISDICTION EXISTS IN THIS CASE.

### A. The Equity Owners' claims "arise under" New York law, not the Bankruptcy Code.

The Third Circuit defines claims "arising under" title 11 as those claims where "the Bankruptcy Code creates the cause of action or provides the substantive right invoked." *Stoe* v. *Flaherty*, 436 F.3d 209, 217 (3d Cir. 2006) (citing *Halper* v. *Halper*, 164 F.3d 830, 836-37 n.7 (3d Cir. 1999)). This necessarily excludes "state law breach of contract claims" and other "common-law legal theories" that are "not created by the Bankruptcy Code." *Susquehanna Commercial Fin., Inc*. v. *Herdocia*, 2007 WL 137837, at *3 (E.D. Pa. Jan. 16, 2007) ("[S]tate

7

law breach of contract claims . . . do not 'arise under' title 11 because . . . [they] do[] not invoke rights provided by title 11 of the United States Code."); *Reunion Indus., Inc.* v. *Steel Partners II, L.P.*, 410 B.R. 170, 174 (W.D. Pa. 2008) ("[A]rising under" jurisdiction was not present where the plaintiff brought claims under "common-law legal theories (fraud, breach of fiduciary duty, good faith) which were not created by the Bankruptcy Code.").[2]

Here, the Equity Owners entered into contracts with another non-debtor, Energy Transfer, governed by New York law. Energy Transfer breached those contracts and made other misrepresentations directly to the Equity Owners on which the Equity Owners relied, giving rise to state-law claims for breach of contract, negligent misrepresentation and unjust enrichment. These causes of action all derive from New York law, not the Bankruptcy Code. Accordingly, no "arising under" jurisdiction exists in this Court.

### B. The Equity Owners' claims are independent of, and do not "arise in," EdgeMarc's bankruptcy.

"[C]laims that 'arise in' a bankruptcy case," the Third Circuit has held, must be "claims that by their nature, not their particular factual circumstance, could only arise in the context of a bankruptcy case." *Stoe*, 436 F.3d at 218; *see also, e.g.*, *In re Riverside Nursing Home*, 144 B.R. 951, 955 (S.D.N.Y. 1992) ("A matter arises in a case under title 11 if it is a proceeding that, by its nature, could only arise in a bankruptcy case and has no existence outside of the bankruptcy.").

As numerous courts have held, a state-law dispute between non-debtors does not "arise in" a bankruptcy case, especially where, as here, the dispute preceded the bankruptcy filing and could be litigated independently of the bankruptcy. *See, e.g.*, *Bank of Am., N.A.* v. *Lightstone*

---

[2]    The Second Circuit similarly requires claims to "clearly invoke substantive rights created by bankruptcy law" to arise under title 11. *In re Housecraft Indus. USA, Inc.*, 310 F.3d 64, 70 (2d Cir. 2002); *accord In re Fairfield Sentry Ltd. Litig.*, 458 B.R. 665, 675-76 (S.D.N.Y. 2011).

8

*Holdings, LLC (In re Extended Stay, Inc.)*, 418 B.R. 49, 58 (Bankr. S.D.N.Y. 2009) (the "standard contract case between two non-debtors . . . does not present bankruptcy issues and does not arise under the Bankruptcy Code"); *In re New 118th LLC*, 396 B.R. 885, 890 (Bankr. S.D.N.Y. 2008) (finding no "arising in" jurisdiction over "garden-variety state law claim between non-debtor parties"). In addition, "arising in" jurisdiction does not exist simply because the debtor may have had a role in the relevant commercial relationship — rather, the relevant question is whether the non-debtor plaintiff could "allege breach of contracts claims against [the non-debtor] defendant" independent of the bankruptcy. *Susquehanna Commercial Fin.*, 2007 WL 137837, at *3. Thus, where two non-debtors entered into a lease of office equipment supplied by the debtor, an action alleging breach of contract for failure to make payments under that lease and fraudulent marketing of the underlying equipment by the debtor was found *not* to arise in the bankruptcy, despite the debtor's involvement in the transaction. *Id.* at *1, *3.

Here, the Equity Owners asserted state-law causes of action against Energy Transfer, before EdgeMarc's bankruptcy filing, predicated on pre-petition events. The causes of action are *not* dependent on EdgeMarc's bankruptcy filing or the progress of its chapter 11 case.

Moreover, Energy Transfer's argument that the Equity Owners' claims are "derivative of the rights of the Debtors . . . and alleged harm to the Debtors, and thus represent assets of the Debtors' estates," fails to provide a basis for "arising in" jurisdiction. *See* Notice of Removal ¶¶ 7(h), 7(i), 9. As demonstrated in the Equity Owners' Opposition to Energy Transfer's Motion to Dismiss, the causes of action here — based on the certifications and other representations made by Energy Transfer to the Equity Owners — do not belong to the debtors' estates. *See NAF Holdings, LLC v. Li & Fung (Trading) Ltd.*, 118 A.3d 175, 176 (Del. 2015); *Citigroup Inc. v. AHW Inv. P'ship*, 140 A.3d 1125, 1139 (Del. 2016). The Court is respectfully referred to that

9

opposition brief for further discussion and authority regarding ownership of the causes of action in the Complaint.

## II. SUBSTANTIAL QUESTIONS EXIST AS TO "RELATED TO" JURISDICTION.

To the extent this Court has any jurisdiction over this action, it would be based on the action being "related to" EdgeMarc's bankruptcy. "Related to" jurisdiction is broad but, as the Supreme Court has explained, it is not "limitless." *Celotex Corp.* v. *Edwards*, 514 U.S. 300, 308 (1995). Under the Third Circuit's decision in *Pacor, Inc.* v. *Higgins*, "a civil proceeding is related to bankruptcy" if "the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." 743 F.2d 984, 994 (3d Cir. 1984) (emphasis omitted). Put another way, "an action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate." *Id.*[3]

"Related to" jurisdiction will not be found based on "the mere fact that there may be common issues of fact between a civil proceeding and a controversy involving the bankruptcy estate." *Pacor*, 743 F.2d at 994. In other words, "[j]udicial economy itself does not justify federal jurisdiction." *Id.* (citing *Aldinger* v. *Howard*, 427 U.S. 1 (1976)). Thus, while "overlapping facts are relevant to supplemental jurisdiction," which is not at issue here, they "do not create 'related to' bankruptcy jurisdiction." *In re Bernard L. Madoff Inv. Sec. LLC*, 561 B.R. 334, 346 (Bankr. S.D.N.Y. 2016) (citing *Pacor*, 743 F.2d at 994). And, ultimately, doubts as to jurisdiction should be resolved against removal. *In re Methyl Tertiary Butyl Ether ("MTBE")*

---

[3] "Conceivable effects typically manifest themselves by altering the amount of property available for distribution to the creditors of a bankruptcy estate or the allocation of property among such creditors." *Post Inv'rs LLC* v. *Gribble*, 2012 WL 4466619, at *3 (S.D.N.Y. Sept. 27, 2012) (internal quotation marks and brackets omitted). But "any contingencies cannot be too far removed," as "too many links in the chain of causation before the bankruptcy estate is affected may preclude 'related to' jurisdiction." *Id.*; *see also Nuveen Mun. Trust ex rel. High Yield Bond Fund* v. *WithumSmith Brown, P.C.*, 692 F.3d 283, 294 (3d Cir. 2012) ("'related to' jurisdiction does not exist if another action would need to be filed before the current action could affect a bankruptcy proceeding").

*Prods. Liab. Litig.*, 488 F.3d 112, 124 (2d Cir. 2007) ("[O]ut of respect for the limited jurisdiction of the federal courts and the rights of states, we must resolv[e] any doubts against removability.").

Here, Energy Transfer raises four main arguments in support of "related to" jurisdiction. *See* Notice of Removal ¶ 7(a)-(k). First, Energy Transfer argues that the Equity Owners seek to "adjudicate potential claims by [the] estate of Debtor EdgeMarc against [Energy Transfer]" and that their claims are "derivative of the rights of the Debtors" and "arise from alleged harm to the Debtors." *Id.* ¶ 7(g)-(i). Second, Energy Transfer asserts the existence of "disputes of fact and law that are inextricably intertwined" and the potential for "claims of res judicata, [or] collateral estoppel" support a finding of jurisdiction. *Id.* ¶ 7(f), (j). Third, Energy Transfer similarly contends that "Plaintiffs seek to adjudicate important and material rights, claims and liabilities of [the Debtors]," including "whether [Energy Transfer] constructed the Revolution System pipeline according to required standards," whether "the landslide that damaged the Revolution System was not a force majeure event," and whether EdgeMarc "properly terminated" certain of its agreements with Energy Transfer. *Id.* ¶ 7(a)-(e). Finally, Energy Transfer asserts that the "outcome of this litigation may impair rights of the Debtors' estates to investigate, and if warranted, bring claims against the Plaintiffs." *Id.* ¶ 7(k).

As discussed above and in the Equity Owners' Opposition to Energy Transfer's Motion to Dismiss, Energy Transfer's assertion that the Equity Owners do not own the causes of action in the Complaint, and that such causes of action are derivative of EdgeMarc, has no merit. Similarly, while questions of whether Energy Transfer "constructed the Revolution System pipeline according to required standards," and whether the Pipeline Explosion was a force majeure event, may be presented in both this action and the lawsuit brought by EdgeMarc against

Energy Transfer,[4] *id.* ¶ 7(b), the Third Circuit has held that "common issues" do not create "related to" bankruptcy jurisdiction. *Pacor*, 743 F.2d at 994; *see also In re Winstar Commc'ns, Inc.*, 284 B.R. 40, 50 (Bankr. D. Del. 2002) ("[T]he mere fact that there may be common issues of fact between a civil proceeding and a controversy involving the bankruptcy estate does not bring the matter within the scope of [bankruptcy jurisdiction]."). Finally, there is nothing to support Energy Transfer's assertion that this action may impair the debtors' ability to investigate claims against the Equity Owners. Notice of Removal ¶ 7(k). As an initial matter, there are no such claims. And, in any event, the Equity Owners have cooperated to provide documents to the Official Committee of Unsecured Creditors; the Committee has raised none of the issues that Energy Transfer has raised. Thus, none of Energy Transfer's arguments establish "related to" jurisdiction.

If the Court concludes that it does not have "related to" subject matter jurisdiction, remand is required on that basis alone. But, in all events, as set forth below, the Court is required to abstain given that its jurisdiction is based at most on the "related to" prong of the jurisdictional test.

### III. EVEN IF "RELATED TO" JURISDICTION EXISTS, THIS COURT MUST ABSTAIN FROM ADJUDICATING THE EQUITY OWNERS' CLAIMS.

Even if "related to" jurisdiction exists, abstention is mandated by statute for state-law claims that do not fall within a bankruptcy court's core "arising under" or "arising in" jurisdiction. Under 28 U.S.C. § 1334(c)(2), "[u]pon timely motion of a party in a proceeding

---

[4] That overlap should not be overstated. Energy Transfer focuses on contractual rights "under the GPA and ITCs," which governed EdgeMarc's relationships with Energy Transfer, *see* Notice of Removal ¶ 7(a), (d), (e), but the contracts at issue in this action are the Commitment Agreements that required Energy Transfer to deliver Project Status Notices to the Equity Owners starting in early 2018 and to "promptly notify" the Equity Owners "as soon as it knows of any event reasonably likely to cause a delay" in its pipeline system being put into commercial service, *see* Compl. ¶¶ 49-61. By contrast, the debtors' causes of action focus on the Pipeline Explosion in September 2018 and whether the ITCs were properly terminated in January 2019. *See* Notice of Removal, Ex. G at ¶¶ 86-89, 131-32, 135-52.

based upon a state law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the *district court shall abstain from hearing such proceeding* if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction." 28 U.S.C. § 1334(c)(2) (emphasis added).

Pursuant to that statutory mandate, the Third Circuit has held that "upon a timely motion under § 1334(c)(2), a *district court must abstain* if the following five requirements are met: (1) the proceeding is based on a state law claim or cause of action; (2) the claim or cause of action is 'related to' a case under title 11, but does not 'arise under' title 11 and does not 'arise in' a case under title 11; (3) federal courts would not have jurisdiction over the claim but for its relation to a bankruptcy case; (4) an action 'is commenced' in a state forum of appropriate jurisdiction; and (5) the action can be 'timely adjudicated' in a state forum of appropriate jurisdiction." *Stoe*, 436 F.3d at 213 (emphasis added).

Here, there can be no dispute that the claims at issue are predicated on state law and commenced in an appropriate state forum; indeed, the parties consented to jurisdiction in New York in their contracts. Compl. ¶ 25; Metz Decl., Exs. N, O § 8. In addition, Energy Transfer has not asserted that the federal courts have jurisdiction other than in connection with EdgeMarc's bankruptcy or that the Commercial Division of the New York Supreme Court is not capable of timely adjudicating this action. Nor is there any basis to assert that timely adjudication could not be had in the New York state court, as courts have routinely abstained in favor of the New York Supreme Court. *E.g.*, *GE Oil & Gas, LLC* v. *Turbine Generation Servs., LLC*, 2019 WL 2008575, at *7 (S.D.N.Y. May 7, 2019) (abstaining and holding that the New

York Supreme Court "is entirely capable of timely adjudicating" a claim); *Fried* v. *Lehman Bros. Real Estate Assocs. III, L.P.*, 496 B.R. 706, 711 (S.D.N.Y. 2013) (rejecting arguments that New York Supreme Court could not timely adjudicate claims and granting abstention); *Allstate Ins. Co.* v. *Ace Sec. Corp.*, 2011 WL 3628852, at *10 (S.D.N.Y. Aug. 17, 2011) (same). Abstention under 28 U.S.C. § 1332(c)(2) is therefore mandatory.

## CONCLUSION

For the foregoing reasons, the Equity Owners respectfully request that this Court remand this action to the Commercial Division of the New York Supreme Court, New York County, to adjudicate the merits of their causes of action against Energy Transfer.

Dated:  July 30, 2019

Emil A. Kleinhaus (*admitted pro hac vice*)
Carrie M. Reilly (*pro hac vice pending*)
S. Christopher Szczerban (*pro hac vice pending*)
Corey J. Banks (*pro hac vice pending*)
Michael H. Cassel (*admitted pro hac vice*)
WACHTELL, LIPTON, ROSEN & KATZ
51 West 52nd Street
New York, New York  10019
Telephone:  (212) 403-1000
Facsimile:  (212) 403-2000
EAKleinhaus@wlrk.com
CMReilly@wlrk.com
SCSzczerban@wlrk.com
CJBanks@wlrk.com
MHCassel@wlrk.com

Respectfully submitted,

*/s/ Patrick A. Jackson*
Patrick A. Jackson (Del Bar No. 4976)
DRINKER BIDDLE & REATH LLP
222 Delaware Avenue, Suite 1410
Wilmington, Delaware  19801-1621
Phone:  (302) 467-4200
Facsimile:  (302) 467-4201
Patrick.Jackson@dbr.com

*Attorneys for Plaintiffs GSCP VI EdgeMarc Holdings, L.L.C., GSCP VI Parallel EdgeMarc Holdings, L.L.C., WSEP and Bridge 2012 EdgeMarc Holdings, L.L.C., and EM Holdco LLC*