# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>EDGEMARC ENERGY HOLDINGS, LLC, *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 19-11104 (JTD)<br><br>(Jointly Administered) |
| GSCP VI EDGEMARC HOLDINGS, L.L.C., GSCP VI PARALLEL EDGEMARC HOLDINGS, L.L.C., WSEP AND BRIDGE 2012 EDGEMARC HOLDINGS, L.L.C., and EM HOLDCO LLC,<br><br>Plaintiffs,<br><br>v.<br><br>ETC NORTHEAST PIPELINE, LLC,<br><br>Defendant. | Adv. Pro. No. 19-50269-JTD<br><br><br><br><br><br>**Relates to Docket Nos. 9, 33** |

## DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, where applicable, are: EdgeMarc Energy Holdings, LLC (6900), EM Energy Manager, LLC (5334), EM Energy Employer, LLC (8026), EM Energy Ohio, LLC (6935), EM Energy Pennsylvania, LLC (1541), EM Energy West Virginia, LLC (3771), EM Energy Keystone, LLC (7506), EM Energy Midstream Ohio, LLC (1268), EM Energy Midstream Pennsylvania, LLC (3963). The Debtors' corporate headquarters and mailing address is 1800 Main Street, Suite 220, Canonsburg, PA 15317.

DOCS_DE:224980.4 23761/001

## Table of Contents

| | | Page |
|---|---|---:|
| A. | The plain language of Section 3 classifies Section 2(b) certifications as conditions precedent and precludes damages claims. | 1 |
| B. | Goldman Sachs's claims are derivative not direct. | 4 |
| C. | The attack on this Court's jurisdiction lacks merit. | 6 |
| D. | Goldman's unjust enrichment claim should be dismissed. | 6 |
| E. | Goldman Sachs's negligent misrepresentation claim is a breach of contract claim masquerading as a tort claim. | 8 |
| Conclusion | | 10 |

# TABLE OF AUTHORITIES

**Cases**

*101123 LLC v. Solis Realty LLC*,
   23 A.D.3d 107 (2005) .................................................................................................... 1

*Auble v. Doyle*,
   38 A.D.3d 1264 (2007) .................................................................................................. 8

*Backus v. U3 Advisors, Inc.*,
   1:16-CV-8990-GHW, 2017 WL 3600430 (S.D.N.Y. Aug. 18, 2017) ............................. 5

*Cooney v. Osgood Mach., Inc.*,
   612 N.E.2d 277 (N.Y. 1993) .......................................................................................... 8

*El Paso Pipeline GP Co., L.L.C. v. Brinckerhoff*,
   152 A.3d 1248 (Del. 2016) ......................................................................................... 4, 5

*eToll, Inc. v. Elias/Savion Advert., Inc.*,
   811 A.2d 10 (Pa. 2002) .................................................................................................. 9

*Five Star Dev. Resort Communities, LLC v. iStar RC Paradise Valley, LLC*,
   09 CIV. 2085 LTS, 2012 WL 4119561 (S.D.N.Y. Sept. 18, 2012) ............................... 3

*Gerber v. EPE Holdings, LLC*,
   CIV.A. 3543-VCN, 2013 WL 209658 (Del. Ch. Jan. 18, 2013) ................................ 4, 5

*Global Funding Group. LLC v. 133 Community Road, Ltd.*,
   251 F. Supp. 3d 527 (E.D.N.Y. 2017) .......................................................................... 6

*Joseph Sternberg, Inc. v. Walber 36th St. Associates*,
   187 A.D.2d 225 (1993) .................................................................................................. 6

*Kaye v. Grossman*,
   202 F.3d 611 (2d Cir. 2000) ........................................................................................... 7

*Metro. Life Ins. Co. v. Noble Lowndes Intern., Inc.*,
   643 N.E.2d 504 (1994)) ................................................................................................. 3

*Net2Globe Intern., Inc. v. Time Warner Telecom of New York*,
   273 F. Supp. 2d 436 (S.D.N.Y. 2003) ........................................................................... 6

*TruePosition, Inc. v. Sunon, Inc.*,
   CIV.A. 05-3023, 2006 WL 1451496 (E.D. Pa. May 25, 2006) ..................................... 9

DOCS_DE:224980.4 23761/001

**Statutes**

28 U.S.C. § 1334 ............................................................................................................................ 6

**Other Authorities**

5 Corbin, Contracts, § 1068, at 386 ............................................................................................... 3

Goldman Sachs's arguments in response to ETC's motion to dismiss are unpersuasive for the reasons set forth below. The Court should grant ETC's motion and dismiss all claims.

A.  **The plain language of Section 3 classifies Section 2(b) certifications as conditions precedent and precludes damages claims.**

1. Goldman Sachs misreads the commitment letters and misapplies New York law to enlarge its contractual remedies. To start, the primary purpose of the letters is for Goldman Sachs to fund *Edgemarc*'s development of natural gas production. Although ETC is a signatory, the parties assigned it a limited role under the agreement: providing Project Status Notices to determine the timing of Goldman Sachs's funding to Edgemarc. Goldman Sachs's case law about the unenforceability of exclusive remedy provisions when certain obligations are "substantial or fundamental" to a contract therefore has no bearing here.[2]

2. Moreover, the cases cited by Goldman Sachs acknowledge that New York courts hold parties to their express bargains. When a contract "contains a clause specifically setting forth the remedies available," "fundamental rules of contract construction and enforcement require that [the court] limit the buyer to the remedies for which it provided in the . . . contract." *101123 LLC v. Solis Realty LLC*, 23 A.D.3d 107, 108 (2005). Here, the plain language of letters expressly precludes Goldman's breach of contract claims for damages.

---

[2] Goldman Sach's case law on unenforceability is inapposite for other reasons too. First, in *Assured Guar. Mun. Corp. v. Flagstar Bank, FSB*, 920 F. Supp. 2d 475 (S.D.N.Y. 2013), Goldman selectively quotes a complex discussion about the correct method for calculating damages. The court expressly notes, however, that it *upheld* the exclusive remedy provision in the contract. *Id.* at 513. And in *Bear Stearns Mortgage Funding Tr. 2006–SL1 v. EMC Mortgage LLC*, the parties expressly allowed the damages remedy barred here. CV 7701-VCL, 2015 WL 139731, at *17 (Del. Ch. Jan. 12, 2015). The dispute centered on the availability of rescission, a remedy courts analyze differently than damages. Here, Goldman would not be entitled to rescission from ETC here because it funded Edgemarc not ETC. Finally, none of the cited cases address the unique, tripartite contractual arrangement here and under which ETC is not the recipient of Goldman Sachs's funding commitments.

3.      Section 2, titled "Commitment Timeline," implicitly recognizes that ETC's notices are conditions to funding by tying the requirement to the funding timeline. *See Declaration of Andrew Laurent Metz In Support of Motion to Dismiss* [Docket No. 11] (the "Metz Declaration"), Exhibits C-O, *Equity Commitment Letters*, § 2. And Section 3 makes the implicit explicit, incorporating Section 2's notice requirements into the "Conditions" of Goldman Sachs's obligation to fund. *See id.* § 3. Any breach of the notice provision is therefore subject to Section 3's exclusive remedy provision, which bars suits for damages.

4.      There is nothing unusual or "implied" about Section 3's limitation of remedies. To the contrary, the parties had every reason to limit the remedies available to Goldman Sachs because ***once funding occurred, Edgemarc was perfectly capable of holding ETC to account*** for project delays or any other purported failures. Who better to know if there have been improper delays but Edgemarc, the producer of the oil and gas intended to pass through ETC's pipeline system? Indeed, the letters reference the detailed agreements between ETC and Edgemarc that govern the gas pipeline project, and Edgemarc has asserted allegations identical to Goldman's in a separate lawsuit. *See Metz Declaration*, Exhibit A, *Answer, New Matter, and Counterclaims* filed February 27, 2019, *ETC Northeast Pipeline, LLC v. EM Energy Pennsylvania, LLC*.

5.      The cases cited by Goldman Sachs have no application to this particular remedy provision. They either recite uncontroversial principles of contract law or construe dissimilar contract language. And it is irrelevant that the exclusive remedy provision here limits itself to "the failure of any of the conditions set forth in this Section 3" rather than encompassing

2

the "entire agreement." The limitation of remedies had no need to extend beyond Section 3 because there are no other sections to which a limitation of remedies against ETC would be necessary. The rest of the commitment letter concerns obligations between Goldman and Edgmarc.[3]

6. As a last resort, Goldman claims that exclusive remedy provisions are unenforceable against allegations of gross negligence. Resp. at 23. First, Goldman has not asserted any allegations of gross negligence.[4] But just as important, the public policy exception applies only to the "[e]xculpation of intentional or reckless harm from *tort* liability." *Five Star Dev. Resort Communities, LLC v. iStar RC Paradise Valley, LLC*, 09 CIV. 2085 LTS, 2012 WL 4119561, at *4 (S.D.N.Y. Sept. 18, 2012) (citing *Metro. Life Ins. Co. v. Noble Lowndes Intern., Inc.*, 643 N.E.2d 504 (1994)). Parties are free to bargain away contractual risk. *Five Star Dev.*, 2012 WL 4119561, at *4 ("[T]he risk of economic harm stemming from deliberate non-performance that is motivated by the economic self-interest of the breaching party is, . . . the sort of risk assumed by the commercial counterparty to an exculpatory clause."). Goldman may "regret [its] assumption of the risks of non-performance in this manner; but the courts let [it] lie on the bed [it] made." *Metro. Life Ins. Co.*, 643 N.E.2d at 507 (quoting 5 Corbin, Contracts, § 1068, at 386).

---

[3] Without any support, Goldman claims ETC drafted the letters. Nothing in the record supports this assertion, and it does not allege that fact in the Complaint. Goldman is not entitled to any favorable presumptions on that basis.

[4] Moreover, the allegations it proposes to amend the Complaint with – alleged "regulatory violations" – do not reflect breaches of the commitment letters. A party cannot use generalized allegations of gross negligence, untethered from the contract provision on which its claim is based, to conjure up a public policy exception.

7. Finally, Goldman Sachs's interpretation potentially exposes ETC, a minor party to the commitment letters, to hundreds of millions of dollars in damages. The idea that the parties would, via letter agreement, allow imposition of such an onerous outcome without clearly saying so defies common sense. The Court should hold Goldman to the "sole and exclusive remedy" it bargained for in the letters and dismiss its contract claim.

**B.   Goldman Sachs's claims are derivative not direct.**

8. Goldman Sachs mischaracterizes Delaware law in contending its breach of contract claims are direct rather than derivative. After issuing the opinion in *NAF Holdings*, the Delaware Supreme Court clarified that its holding there "does not support the proposition that *any* claim sounding in contract is direct by default, irrespective of *Tooley*." *El Paso Pipeline GP Co., L.L.C. v. Brinckerhoff*, 152 A.3d 1248, 1259 (Del. 2016) (emphasis in original). "Nor does it mean that" status as an equity sponsor and party to certain agreements enable a plaintiff "to litigate directly every claim arising from" those agreements. *Id.* When there is "no separation between the plaintiff's claim and a claim belonging to the [company]," the claim is derivative not direct. *Id.* at 1262 (quoting *Gerber v. EPE Holdings, LLC*, CIV.A. 3543-VCN, 2013 WL 209658, at *12 (Del. Ch. Jan. 18, 2013)).

9. Such is the case here. Although Goldman Sachs has artfully pled its contract claim to focus on "Project Status Notices" provided under the three-party commitment letters, the alleged harm rests on the "failure" of ETC's pipeline system, which resulted in financial losses absorbed by Edgemarc. Compl. ¶ 81. But any recovery based on a failure of the pipeline system undisputedly turns on the gas processing contract to which only ETC and

4

Edgemarc are parties. *See Metz Declaration*, Exhibits C-O, *Equity Commitment Letters*, introduction (identifying EM Energy Pennsylvania, LLC and ETC Northeast Pipeline, LLC as parties to Gathering and Processing Agreement and Individual Transaction Confirmations). Further, as in *El Paso Pipeline* and *Gerber*, the effect of any failure fell "immediately and discretely upon" Edgemarc not Goldman. *Gerber*, 2013 WL 209658, at *12. Because Goldman's alleged harm—the loss of its equity investment in Edgemarc—flows through Edgemarc and its agreements with ETC, Goldman's claims are derivative. *See Backus v. U3 Advisors, Inc.*, 1:16-CV-8990-GHW, 2017 WL 3600430, at *16 (S.D.N.Y. Aug. 18, 2017) (applying Delaware law and finding equity shareholder's breach of contract claim was derivative because although pled as "having damaged her directly," the "essence of her claim" was that Defendants failed to abide by contractual obligations to the company).

        10.     Indeed, it is hard to conceive of damages to Goldman Sachs that do *not* flow derivatively through Edgemarc. In the very first paragraph of the commitment letters, the parties acknowledge the existence of the gas processing agreement to which Goldman is not a party and explain that Goldman has committed to invest *in Edgemarc* not ETC. *See Metz Declaration*, Exhibits C-O, *Equity Commitment Letters*, introduction (setting forth commitment by Equity Owners to purchase newly issued membership interests of EdgeMarc Energy Holdings, LLC). Put differently, only Edgemarc can be directly harmed by failures related to the gas pipeline system. Because the alleged harm to Goldman's equity investment arises from alleged breaches of the gas processing contract between Edgemarc and ETC, Goldman's claims are derivative not direct.

C. **The attack on this Court's jurisdiction lacks merit.**

11. As detailed in Defendant's response to Goldman's motion to remand, the Court has subject matter jurisdiction under 28 U.S.C. § 1334. Thus, despite Goldman's suggestion to the contrary, the Court may address all of Defendant's arguments for dismissal.

D. **Goldman's unjust enrichment claim should be dismissed.**

12. Goldman's own case law acknowledges that dismissal of quasi-contract claims like unjust enrichment is appropriate when "a written contract fully detailing all applicable terms and conditions of the agreement between the parties" exists. *Joseph Sternberg, Inc. v. Walber 36th St. Associates*, 187 A.D.2d 225, 227 (1993). Goldman emphasizes, however, a narrow exception to this rule for circumstances in which "no valid contract was formed" or "contractual obligations did not encompass the events underlying the asserted basis" for the unjust enrichment claim. *Net2Globe Intern., Inc. v. Time Warner Telecom of New York*, 273 F. Supp. 2d 436, 466 (S.D.N.Y. 2003).

13. That is not this case. The allegations in Goldman's complaint – which relate to the Project Status Notices and alleged failures of the gas pipeline system – fall squarely within the four corners of a contract. *See, e.g., Global Funding Group. LLC v. 133 Community Road, Ltd.*, 251 F. Supp. 3d 527 (E.D.N.Y. 2017) (dismissing unjust enrichment claim where defendants did not dispute the existence of a valid and enforceable contract and therefore the claim was "directly duplicative of the breach of contract claim").

14. Goldman's arguments for keeping its unjust enrichment claim hold no water. However characterized, the payments it made to Edgemarc cannot be recovered under a

6

restitutionary theory because they fall within the terms of the commitment letters. Nor is there any authority that alleged "mistakes of fact" allow Goldman to skirt the existence of a written contract governing its funding payments.[5] And Goldman's agreement to limit its contractual remedies does not make the excluded remedy (damages) suddenly available through an unjust enrichment claim. To hold otherwise would eviscerate the parties' bargain.

15. Finally, Goldman is wrong that it has sufficiently pled a key element of its unjust enrichment claims: a benefit received by ETC. While ETC *indirectly* benefitted from Goldman's injection of equity funding into Edgemarc, New York law requires a "specific and direct benefit" to support unjust enrichment. *Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir. 2000) (holding that while certain testimony potentially suggested receipt of "some indirect benefit" from a loan, it did not "establish the specific and direct benefit necessary to support an unjust enrichment claim"). Because any benefit to ETC flowed through Edgemarc, Goldman has failed to state a claim for unjust enrichment.

---

[5] Further, it does not matter that Goldman's unjust enrichment claim *also* alleges breach of an agreement to which Goldman is not a party (the GPA). Unjust enrichment claims do not allow third parties to enforce other parties' contractual obligations. And even if they did, the conduct is still governed by "a written contract fully detailing all applicable terms and conditions." *Joseph Sternberg, Inc. v. Walber 36th St. Associates*, 187 A.D.2d 225, 227 (1993).

E. **Goldman Sachs's negligent misrepresentation claim is a breach of contract claim masquerading as a tort claim.**

16. At the outset, New York law applies. Plaintiffs' principal place of business is New York, and thus, New York is where they suffered the alleged harm. Further, the parties chose New York law to govern their business relationship and New York courts to resolve their disputes (at least those unrelated to bankruptcy). Compl. ¶¶ 13–18. Accordingly, New York has "the greatest interest" in regulating ETC's alleged conduct. *Cooney v. Osgood Mach., Inc.*, 612 N.E.2d 277, 280 (N.Y. 1993).

17. And under New York law, a claim for negligent misrepresentation requires (1) a special relationship and (2) a duty supplied "extraneous to the performance of the contract." *Auble v. Doyle*, 38 A.D.3d 1264, 1266 (2007). Goldman Sachs has not sufficiently alleged either here. First, the parties maintained an ordinary business relationship. Information asymmetries regularly exist between contracting parties. Goldman's attempt to conjure up a special relationship here threatens to turn every arms-length contractual relationship into a "special" one and vastly expand the universe of negligent misrepresentation claims.

18. Second, Goldman has not identified any duty apart from those supplied by the various contracts mentioned in the Complaint. Because the alleged misrepresentations mirror the contractual duties asserted in Goldman's breach of contract claim, Goldman has failed to state a claim under New York law.

19. Goldman Sachs's negligent misrepresentation claim fails under Pennsylvania law too. That state's "gist of the action" doctrine "bars plaintiffs from recovering under tort theories for failure to perform a contract." *TruePosition, Inc. v. Sunon, Inc.*, CIV.A.

8

05-3023, 2006 WL 1451496, at *3 (E.D. Pa. May 25, 2006).[6] And as noted above, Goldman Sachs's tort claim mirrors its breach of contract claim. *Compare* Compl. ¶ 87 (asserting a breach based on "inaccurate Project Status Notices certifying that there was no Project Delay") *with* Compl. ¶ 101 (asserting a misrepresentation claim based on ETC's statements "that 'there is no Project Delay'"). Because Goldman's tort claim "essentially duplicates" its breach of contract claim, Pennsylvania law requires dismissal. *eToll, Inc. v. Elias/Savion Advert., Inc.*, 811 A.2d 10, 19 (Pa. 2002).[7]

---

[6] Further, "[w]hether the gist of the action doctrine applies in any particular setting is a question of law," which makes it appropriate to address at the motion to dismiss stage. *The Knit With v. Knitting Fever, Inc.*, CIV.A.NO.08-4221, 2009 WL 3427054, at *5 (E.D. Pa. Oct. 20, 2009), aff'd, 625 Fed. Appx. 27 (3d Cir. 2015).

[7] *See also Williamsburg Commons Condo. Ass'n v. State Farm Fire & Cas. Co.*, 907 F. Supp. 2d 673, 679 (E.D. Pa. 2012) (dismissing a misrepresentation claim under the gist of the action doctrine "[b]ecause the alleged misrepresentations are contained in the provisions of the contract").

## Conclusion

The Court should dismiss Goldman Sachs's claims because: (1) an exclusive remedies provision precludes a claim for damages; (2) Goldman Sachs does not have standing to assert its claims; and (3) the commitment letters govern the parties' relationships, and no quasi-contract or tort remedy is available.

Dated: August 16, 2019

PACHULSKI STANG ZIEHL & JONES LLP

*/s/ Laura Davis Jones*
Laura Davis Jones (DE Bar No. 2436)
Timothy P. Cairns (DE Bar No. 4228)
919 N. Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400
Email: ljones@pszjlaw.com
tcairns@pszjlaw.com

-and-

LYNN PINKER COX & HURST, L.L.P.
Michael P. Lynn (admitted *pro hac vice*)
Chris Patton (admitted *pro hac vice*)
John Adams (admitted *pro hac vice*)
2100 Ross Avenue, Suite 2700
Dallas, Texas 75201
Telephone: (214) 981-3800
Facsimile: (214) 981-3839
Email: mlynn@lynnllp.com
cpatton@lynnllp.com
jadams@lynnllp.com

*Counsel to ETC Northeast Pipeline, LLC*