## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| EDGEMARC ENERGY HOLDINGS, LLC, *et al.*, | Case No. 19-11104-JTD |
| *Debtors*. | |
| GSCP VI EDGEMARC HOLDINGS, L.L.C., GSCP VI PARALLEL EDGEMARC HOLDINGS, L.L.C., WSEP AND BRIDGE 2012 EDGEMARC HOLDINGS, L.L.C., and EM HOLDCO LLC, | Adv. Pro. No. 19-50269-JTD |
| *Plaintiffs*, | |
| v. | **Re: Adv. D.I. 35, 36, 42** |
| ETC NORTHEAST PIPELINE, LLC, | |
| *Defendant*. | |

## REPLY BRIEF IN SUPPORT OF EQUITY OWNERS' MOTION FOR ABSTENTION AND REMAND

Emil A. Kleinhaus (*pro hac vice*)
Carrie M. Reilly (*pro hac vice*)
S. Christopher Szczerban (*pro hac vice*)
Corey J. Banks (*pro hac vice*)
Michael H. Cassel (*pro hac vice*)
WACHTELL, LIPTON, ROSEN & KATZ
51 West 52nd Street
New York, New York  10019
Telephone:  (212) 403-1000
Facsimile:  (212) 403-2000
EAKleinhaus@wlrk.com
CMReilly@wlrk.com
SCSzczerban@wlrk.com
CJBanks@wlrk.com
MHCassel@wlrk.com

Dated:  August 23, 2019

Patrick A. Jackson (Del. Bar No. 4976)
DRINKER BIDDLE & REATH LLP
222 Delaware Avenue, Suite 1410
Wilmington, Delaware  19801-1621
Telephone:  (302) 467-4200
Facsimile:  (302) 467-4201
Patrick.Jackson@dbr.com


*Attorneys for Plaintiffs GSCP VI EdgeMarc Holdings, L.L.C., GSCP VI Parallel EdgeMarc Holdings, L.L.C., WSEP and Bridge 2012 EdgeMarc Holdings, L.L.C., and EM Holdco LLC*

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ....................................................................................................1

ARGUMENT ................................................................................................................................1

      I.       NO CORE BANKRUPTCY JURISDICTION EXISTS IN
             THIS CASE. ..........................................................................................1

      II.      SUBSTANTIAL QUESTIONS REMAIN AS TO
             "RELATED TO" JURISDICTION. ........................................................5

      III.    THIS COURT MUST ABSTAIN FROM ADJUDICATING
             THE EQUITY OWNERS' CLAIMS.......................................................7

           A.      The New York Supreme Court can timely adjudicate this
                  proceeding.............................................................................................8

           B.      The possibility of procedural consolidation has no
                  bearing on mandatory abstention. ........................................................10

CONCLUSION............................................................................................................................11

## TABLE OF AUTHORITIES

Page

**Cases**

*Allen* v. *McCurry*,
    449 U.S. 90 (1980)................................................................................. 6

*Allstate Ins. Co.* v. *Ace Sec. Corp.*,
    2011 WL 3628852 (S.D.N.Y. Aug. 17, 2011)............................................... 9 & n.5

*Allstate Ins. Co.* v. *Credit Suisse Sec. (USA) LLC*,
    2011 WL 4965150 (S.D.N.Y. Oct. 19, 2011)............................................... 8, 9

*Backus* v. *U3 Advisors, Inc.*,
    2017 WL 3600430 (S.D.N.Y. Aug. 18, 2017).............................................. 3, 4

*BGC Partners, Inc.* v. *Avison Young (Canada), Inc.*,
    919 F. Supp. 2d 310 (S.D.N.Y. 2013) ......................................................... 8

*Citigroup Inc.* v. *AHW Inv. P'ship*,
    140 A.3d 1125 (Del. 2016) ......................................................................... 3

*Doe* v. *Hesketh*,
    828 F.3d 159 (3d Cir. 2016) ...................................................................... 6

*El Paso Pipeline GP Co., LLC* v. *Brinckerhoff*,
    152 A.3d 1248 (Del. 2016) ........................................................................ 3, 4

*Fried* v. *Lehman Bros. Real Estate Assocs. III, L.P.*,
    496 B.R. 706 (S.D.N.Y. 2013)................................................................... 9 n.5, 10

*GE Oil & Gas, LLC* v. *Turbine Generation Servs., LLC*,
    2019 WL 2008575 (S.D.N.Y. May 7, 2019) ............................................... 9 & n.5

*Gerber* v. *EPE Holdings, LLC*,
    2013 WL 209658 (Del. Ch. Jan. 18, 2013)................................................. 3, 4

*Hall* v. *Hall*,
    138 S. Ct. 1118 (2018).............................................................................. 11

*In re Bernard L. Madoff Inv. Sec., LLC*,
    2013 WL 5511027 (S.D.N.Y. Sept. 30, 2013)............................................ 3

*In re Drauschak*,
    481 B.R. 330 (Bankr. E.D. Pa. 2012) ........................................................ 11

*In re Epi-Scan, Inc.*,
    71 B.R. 975 (Bankr. D.N.J. 1987) ............................................................... 10, 11

*In re Exide Techs.*,
    544 F.3d 196 (3d Cir. 2008) ............................................................................. 8

*In re Imerys Talc Am., Inc.*,
    2019 WL 2575048 (Bankr. W.D. Okla. June 21, 2019) ...................................... 6

*In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*,
    488 F.3d 112 (2d Cir. 2007) ............................................................................. 7

*In re N. Am. Refractories Co.*,
    280 B.R. 356 (Bankr. W.D. Pa. 2002) ............................................................... 6

*In re Seven Seas Petroleum, Inc.*,
    522 F.3d 575 (5th Cir. 2008) ............................................................................ 3

*In re Trans World Airlines, Inc.*,
    278 B.R. 42 (Bankr. D. Del. 2002) ............................................................... 9 n.5

*Lifetime Brands Inc.* v. *ARC Int'l, SA*,
    2010 WL 454680 (S.D.N.Y. Jan. 29, 2010) ................................................... 8-9

*Matter of PPDAI Grp. Sec. Litig.*,
    64 Misc. 3d 1208(A), 2019 WL 2751278 (N.Y. Sup. Ct. July 1, 2019).................. 9

*Miller* v. *Santilli*,
    2007 WL 839981 (E.D. Pa. Mar. 15, 2007)...................................................... 11

*NAF Holdings, LLC* v. *Li & Fung (Trading) Ltd.*,
    118 A.3d 175 (Del. 2015) ................................................................................. 3

*Pacor, Inc.* v. *Higgins*,
    743 F.2d 984 (3d Cir. 1984) ............................................................................. 5

*Parmalat Capital Fin. Ltd.* v. *Bank of Am. Corp.*,
    639 F.3d 572 (2d Cir. 2011) ............................................................................. 8

*Stoe* v. *Flaherty*,
    436 F.3d 209 (3d Cir. 2006) ............................................................................. 7

*Sycamore Partners Mgmt., L.P.* v. *Endurance Am. Ins. Co.*,
    2019 WL 3431107 (D. Del. July 30, 2019) ............................................. 8, 9-10, 10

*Tooley* v. *Donaldson, Lufkin & Jenrette, Inc.*,
    845 A.2d 1031 (Del. 2004) ............................................................................... 4

*United States ex rel. Doe* v. *Heart Sol., PC*,
   923 F.3d 308 (3d Cir. 2019) ....................................................................................... 6

## Statutes

28 U.S.C. § 1334(c)(2)........................................................................................... 7, 10

28 U.S.C. § 2075 ...................................................................................................... 11

## Other Authorities

New York State Unified Court System, "Commercial Division – NY Supreme Court: A Brief
   History," https://www.nycourts.gov/courts/comdiv/history.shtml ....................................... 9 n.6

## PRELIMINARY STATEMENT[1]

Energy Transfer has no persuasive response to the Equity Owners' abstention motion. Energy Transfer argues that the causes of action in the Complaint are subject to this Court's core jurisdiction because, according to Energy Transfer, they are property of the EdgeMarc bankruptcy estate. But, as shown in the Equity Owners' prior submissions and below, the causes of action are *not* property of the EdgeMarc estate. Instead, they are direct state-law claims based on contractual and other duties that were owed directly to the Equity Owners by Energy Transfer. The causes of action, accordingly, do not "arise in" a bankruptcy or "under" the Bankruptcy Code. *See* Point I, *infra*.

Since the claims at issue belong to the Equity Owners, this Court's jurisdiction hinges on the theory that they are "related to" EdgeMarc's bankruptcy. But even if the Court has "related to" jurisdiction — which is questionable at best, *see* Point II, *infra* — abstention is required as long as the New York court where this action was filed can "timely adjudicate" the Equity Owners' claims. Energy Transfer has no serious argument that New York's commercial court cannot timely adjudicate a commercial dispute under New York law. *See* Point III, *infra*. This proceeding should therefore be remanded to New York.

## ARGUMENT

### I.   NO CORE BANKRUPTCY JURISDICTION EXISTS IN THIS CASE.

Energy Transfer concedes that this Court lacks "core" jurisdiction over this proceeding unless the Court determines that the Equity Owners' breach of contract and tort claims are derivative rather than direct and therefore property of the Debtors' estate. *See* Def.'s Mem. in

---

[1]     Capitalized terms have the same meanings as in the *Equity Owners' Memorandum of Law in Support of Motion for Abstention and Remand*, D.I. 36.

Opp. to Equity Owners' Mot. for Abstention and Remand at 2, D.I. 42 ("Remand Opp."). The claims, however, belong to the Equity Owners and are not property of the estate.

Energy Transfer argues that the Equity Owners' claims are derivative rather than direct because "any recovery based on a failure of the pipeline system" is necessarily predicated on the "gas processing contract to which only [Energy Transfer] and EdgeMarc are parties," and the Equity Owners seek "the same damages based on the same facts" as the Debtors. Reply Mem. in Supp. of Def.'s Mot. to Dismiss at 4-5, D.I. 41 ("MTD Reply"); *see also* Remand Opp. at 2, 8-9. These assertions are wrong. They mischaracterize both the Complaint and the controlling Delaware case law.

The Equity Owners are not seeking to enforce contractual obligations owed to EdgeMarc. Instead, the claims arise from the Equity Owners' direct dealings with Energy Transfer and the direct representations made by Energy Transfer to the Equity Owners, which induced the Equity Owners to invest $150 million for the benefit of both EdgeMarc and Energy Transfer. The Equity Owners' contract claim is predicated on Commitment Agreements under which Energy Transfer made certifications to the Equity Owners regarding the Gathering System to induce the Equity Owners to make investments. Compl. ¶¶ 85-90, D.I. 1, Ex. A.[2] And the tort claims are likewise based on direct representations made by Energy Transfer to the Equity Owners regarding the Gathering System. Compl. ¶¶ 91-107.

The Equity Owners, accordingly, are seeking redress for the harm caused by Energy Transfer's breach of contractual and other obligations owed directly to them. The claims at issue are thus indistinguishable from those that the Delaware Supreme Court held were direct claims

---

[2] Energy Transfer's suggestion that the Equity Owners somehow failed to attach or accurately present the relevant contracts has no basis in fact. *See* Remand Opp. at 2. The Equity Owners' briefing provided record citations (by docket entry) to all of the relevant contracts, including contracts between EdgeMarc and Energy Transfer, and described the relevant provisions of those contracts in detail. *See* Equity Owners' Mem. in Opp. to Energy Transfer's Mot. to Dismiss at 3-7, D.I. 33 ("MTD Opp.").

belonging to equity holders in *NAF Holdings, LLC* v. *Li & Fung (Trading) Ltd.*, 118 A.3d 175 (Del. 2015), and *Citigroup Inc.* v. *AHW Inv. P'ship*, 140 A.3d 1125 (Del. 2016) (both discussed in MTD Opp. at 7-14). In those cases, the Delaware Supreme Court held that claims brought under New York law "belonged" to equity investors where defendants breached contractual obligations to those investors or made misrepresentations to them, even if the damages sought included depreciation in the value of their equity. *NAF Holdings*, 118 A.3d at 176; *AHW*, 140 A.3d at 1139-40; *see also, e.g.*, *In re Bernard L. Madoff Inv. Sec., LLC*, 2013 WL 5511027, at *4, *9 (S.D.N.Y. Sept. 30, 2013) ("It is well established that a debtor estate's claims against a third party and an estate creditor's claims against the same party are not duplicative or derivative merely because they are based on the same facts."); *In re Seven Seas Petroleum, Inc.*, 522 F.3d 575, 587 (5th Cir. 2008) ("there is nothing illogical or contradictory about saying that [the defendant] might have inflicted direct injuries on both the [investors in the debtor] and [the debtor] during the course of dealings that form the backdrop of both sets of claims").

Energy Transfer does not engage directly with those controlling authorities. Nor does Energy Transfer even try to argue that the Equity Owners' negligent misrepresentation and unjust enrichment claims are derivative. *See* MTD Reply at 4-5. Instead, in asserting that the Equity Owners' contract claim is derivative, Energy Transfer invokes two post-*NAF Holdings* decisions — *El Paso Pipeline GP Co., LLC* v. *Brinckerhoff*, 152 A.3d 1248 (Del. 2016), and *Backus* v. *U3 Advisors, Inc.*, 2017 WL 3600430 (S.D.N.Y. Aug. 18, 2017) — and one earlier decision of the Delaware Chancery Court — *Gerber* v. *EPE Holdings, LLC*, 2013 WL 209658 (Del. Ch. Jan. 18, 2013). MTD Reply at 4-5. Those decisions, however, are fully consistent with *NAF Holdings* and *AHW* and they only confirm that the Equity Owners have standing to pursue the claims they have brought.

*El Paso Pipeline* involved a limited partner's claim of "corporate overpayment" against the general partner of the partnership, based on alleged breaches of the master limited partnership agreement. *El Paso Pipeline*, 152 A.3d at 1261. The court held that this claim "sound[ed] in breach of a contractual duty *owed to the Partnership*" — not the limited partner — and therefore required application of the direct/derivative test set forth in *Tooley* v. *Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031 (Del. 2004). *See El Paso Pipeline*, 152 A.3d at 1260 (emphasis added). In doing so, *El Paso Pipeline* reaffirmed the Delaware Supreme Court's holding in *NAF Holdings* that "when a plaintiff asserts a claim based upon *the plaintiff's own right*, such as a claim for breach of a commercial contract, *Tooley* does not apply." *Id.* at 1259 (emphasis added). Under *El Paso Pipeline*, the claims here fall squarely on the direct side of the direct/derivative line because, as discussed above, the Equity Owners have alleged that Energy Transfer breached contractual and other duties owed directly to them.

*Gerber* likewise involved a corporate overpayment claim by a limited partner against the general partner — alleging that the partnership, as opposed to the limited partner, "paid too much" in a purchase of the general partner's affiliates. *Gerber*, 2013 WL 209658, at *12. It is equally inapposite to this case, where Energy Transfer had (and breached) contractual duties to the Equity Owners separate from their duties to EdgeMarc.

In *Backus*, the Southern District of New York, applying the reasoning of *El Paso Pipeline*, found that *Tooley* applied to a stockholder's claim alleging breach of a provision of the stockholder agreement that required the fellow-stockholder defendants "to devote substantially all of their professional time" to the corporation because such a claim "sound[ed] in breach of a contractual duty owed to [the corporation]." *Backus*, 2017 WL 3600430, at *16. This claim again involved a duty owing to the corporation, not to the stockholder.

-4-

Energy Transfer's cases thus have no application here — where the Equity Owners have sued Energy Transfer for breaching contractual duties owed directly to the Equity Owners (namely the duty to provide certifications to the Equity Owners to induce new investments) and for other representations made directly to the Equity Owners (including representations in August 2017 that the Gathering System would be ready to be put in service by July 1, 2018). Compl. ¶¶ 38, 57-60. The claims brought by the Equity Owners are predicated on state law and do not belong to the EdgeMarc estate; thus, they do not "arise under" the Bankruptcy Code or "arise in" the EdgeMarc bankruptcy case.

## II.    SUBSTANTIAL QUESTIONS REMAIN AS TO "RELATED TO" JURISDICTION.

Abstention is mandatory if this Court has "related to" jurisdiction but not "arising in" or "under" jurisdiction. But, in opposing remand, Energy Transfer has not established that even "related to" jurisdiction exists here. Energy Transfer puts forward two main arguments for "related to" jurisdiction. *See* Remand Opp. at 12-14. Neither of them provides the clear support for exercise of jurisdiction that is necessary to avoid remand.

*First*, Energy Transfer raises the potential for collateral estoppel due to the existence of common issues between this proceeding and EdgeMarc's lawsuit against Energy Transfer. Remand Opp. at 13.[3] But, as Energy Transfer acknowledges, "common issues" alone do not create "related to" bankruptcy jurisdiction. *Pacor, Inc.* v. *Higgins*, 743 F.2d 984, 994 (3d Cir. 1984). Energy Transfer, moreover, provides no explanation for how *the Debtors* could be bound by any determinations made in this proceeding. "[T]he concept of collateral estoppel cannot apply when the party against whom the earlier decision is asserted did not have a 'full and fair

---

[3]    Energy Transfer does not actually claim that a court *would* apply collateral estoppel here. It says there is "no certainty" whether "estoppel principles" would apply and that a court "may," or may not, "determine that collateral estoppel is appropriate." Remand Opp. at 13.

opportunity' to litigate that issue in the earlier case." *Allen* v. *McCurry*, 449 U.S. 90, 95 (1980). Here, where the Debtors are not parties to this proceeding, and are not in privity with the Equity Owners, they would not have a "full and fair opportunity" to litigate the issues raised here. *United States ex rel. Doe* v. *Heart Sol., PC*, 923 F.3d 308, 316-17 (3d Cir. 2019); *Doe* v. *Hesketh*, 828 F.3d 159, 173-74 (3d Cir. 2016).[4]

*Second*, Energy Transfer argues that "damages asserted by the Equity Owners and the Debtors are subject to a single satisfaction, meaning that a recovery by the Equity Owners reduces estate assets, as would a recovery [Energy Transfer] is unable to satisfy," and that "[a]ny recovery by the Equity Owners *may* ultimately lead to a contribution claim by [Energy Transfer] against the Debtors." Remand Opp. at 13-14 (emphasis added). Energy Transfer, however, does not explain *why* the Debtors and the Equity Owners cannot both recover on their claims, when they were independently harmed and the Equity Owners — separate and apart from the Debtors — have claims for amounts that they invested in the Debtors in reliance on representations by Energy Transfer. *See* MTD Opp. at 13. Nor does Energy Transfer provide any support for the notion that it would be "unable to satisfy" two judgments or the grounds for any contribution claim it could bring. Such vague assertions of potential future effects on the estate do not suffice to establish jurisdiction. *See In re Imerys Talc Am., Inc.*, 2019 WL 2575048, at *5 (Bankr. W.D. Okla. June 21, 2019) (potential indemnification claims "too speculative and attenuated" to find "related to" jurisdiction "[w]ithout precise evidence as to the applicability of indemnification or insurance and probable necessity of litigation to establish the same"); *In re N. Am. Refractories Co.*, 280 B.R. 356, 361-62 (Bankr. W.D. Pa. 2002) ("speculation" as to contribution claim insufficient for "related to" jurisdiction).

---

[4]     Energy Transfer also asserts that rulings against Energy Transfer in this action "would have the effect of reducing [Energy Transfer's] claims against the estate." Remand Opp. at 13. But it offers no explanation as to why or how that would be the case.

Energy Transfer, accordingly, has not provided a clear basis for the Court to conclude that it has "related to" jurisdiction.  Because doubts regarding jurisdiction should be resolved against removal, remand would be appropriate even if abstention were not mandatory.  *See In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, 488 F.3d 112, 124 (2d Cir. 2007) ("[O]ut of respect for the limited jurisdiction of the federal courts and the rights of states, we must 'resolv[e] any doubts against removability.'").

## III.    THIS COURT MUST ABSTAIN FROM ADJUDICATING THE EQUITY OWNERS' CLAIMS.

Even if "related to" jurisdiction exists, abstention is mandated by 28 U.S.C. § 1334(c)(2). Energy Transfer does not dispute that three of the five requirements for mandatory abstention are satisfied:  the claims are predicated on state law, this action was commenced in an appropriate state forum, and there is no asserted basis for federal jurisdiction other than bankruptcy jurisdiction.  *See* Remand Opp. at 3-4, 15-17; *see also Stoe* v. *Flaherty*, 436 F.3d 209, 213 (3d Cir. 2006).  Nor does Energy Transfer dispute that, to the extent the Equity Owners have standing to bring the claims they have asserted, those claims do not "arise under" title 11 and do not "arise in" a case under title 11.  *See* Remand Opp. at 2.

Energy Transfer offers two arguments.  *First*, Energy Transfer suggests that this proceeding cannot be "timely adjudicated" in New York.  Remand Opp. at 16-17.  *Second*, Energy Transfer suggests that mandatory abstention is somehow precluded because Bankruptcy Rule 7042 "may" allow this proceeding to be procedurally consolidated with Energy Transfer's separate litigation against EdgeMarc.  Remand Opp. at 15-16.  These arguments are baseless.

### A.    The New York Supreme Court can timely adjudicate this proceeding.

Energy Transfer asserts that the "timely adjudication" requirement for mandatory abstention has not been met.  Remand Opp. at 16-17.  But it does not point to any relevant factor supporting the conclusion that the New York court cannot timely adjudicate this dispute.

Under Third Circuit law, "timely adjudication" does not turn on "whether the action would be *more quickly* adjudicated in the bankruptcy court than in state court, but rather, whether the action can be *timely adjudicated* in the state court."  *In re Exide Techs.*, 544 F.3d 196, 218 n.14 (3d Cir. 2008) (emphases in original; alterations omitted).  Courts consider four factors in "assessing the timeliness issue:  (1) backlog of the state court's calendar; (2) status of the bankruptcy proceeding; (3) complexity of issues; and (4) whether the state court proceeding would prolong the administration or liquidation of the estate."  *Sycamore Partners Mgmt., L.P.* v. *Endurance Am. Ins. Co.*, 2019 WL 3431107, at *7 (D. Del. July 30, 2019); *accord Parmalat Capital Fin. Ltd.* v. *Bank of Am. Corp.*, 639 F.3d 572, 580 (2d Cir. 2011).  All of these factors support abstention here.

**State court backlog**:  Energy Transfer's opposition puts forward no evidence or argument that the New York court has a backlog that would delay resolution of this proceeding. That is not surprising, as many courts have rejected challenges to the New York Supreme Court's — and, in particular, the Commercial Division's — ability to adjudicate cases on a timely basis.  *E.g.*, *BGC Partners, Inc.* v. *Avison Young (Canada), Inc.*, 919 F. Supp. 2d 310, 320 (S.D.N.Y. 2013) (abstaining in favor of Commercial Division of New York Supreme Court); *Allstate Ins. Co.* v. *Credit Suisse Sec. (USA) LLC*, 2011 WL 4965150, at *7-8 (S.D.N.Y. Oct. 19, 2011) (same); *Lifetime Brands Inc.* v. *ARC Int'l, SA*, 2010 WL 454680, at *1-3 (S.D.N.Y. Jan.

29, 2010) (same).[5]  The Commercial Division of the New York Supreme Court is more than capable of expeditiously handling commercial disputes like this case.  According to the website of the New York State Unified Court System, the Commercial Division "makes use of vigorous and efficient case management" and "sets deadlines and enforces them, managing discovery as needed to protect the rights of the parties to fair disclosure while minimizing expense and delay."[6]  The "backlog" prong weighs in favor of abstention.

**Complexity of issues**:  There is no dispute that the Equity Owners' breach of contract claim "is wholly a creature of New York contract law, an area with which the New York Supreme Court has unquestioned expertise."  *GE Oil & Gas*, 2019 WL 2008575, at *7.  Indeed, because the Complaint "alleges only state claims, the Commercial Division may have an edge in the relevant legal expertise."  *Credit Suisse*, 2011 WL 4965150, at *7; *see Ace Sec. Corp.*, 2011 WL 3628852, at *10 ("While federal district courts naturally possess expertise in applying federal law, this advantage dissipates for cases alleging exclusively state claims.").  The Commercial Division has particular expertise regarding the exact sort of commercial contract and tort claims at issue here.  *See Matter of PPDAI Grp. Sec. Litig.*, 64 Misc. 3d 1208(A), 2019 WL 2751278, at *5 (N.Y. Sup. Ct. July 1, 2019) ("[T]he Commercial Division is a long-standing, specialized business court which deals exclusively with complex commercial litigation.").  The complexity of issues prong thus also weighs in favor of abstention.  *Sycamore Partners Mgmt.*, 2019 WL 3431107, at *8 (complexity of issues prong favored abstention where

---

[5]      *See also, e.g.*, *In re Trans World Airlines, Inc.*, 278 B.R. 42, 51 (Bankr. D. Del. 2002) (abstaining in favor of the New York Supreme Court); *GE Oil & Gas, LLC* v. *Turbine Generation Servs., LLC*, 2019 WL 2008575, at *7 (S.D.N.Y. May 7, 2019) (same); *Fried* v. *Lehman Bros. Real Estate Assocs. III, L.P.*, 496 B.R. 706, 711 (S.D.N.Y. 2013) (same); *Allstate Ins. Co.* v. *Ace Sec. Corp.*, 2011 WL 3628852, at *10 (S.D.N.Y. Aug. 17, 2011) (same).

[6]      New York State Unified Court System, "Commercial Division – NY Supreme Court: A Brief History," https://www.nycourts.gov/courts/comdiv/history.shtml (last accessed Aug. 21, 2019).

defendant "fail[ed] to explain why this Court would be better equipped to handle the issues than" the state court).

**Status of bankruptcy / impact on administration of estate**:   Once this Court determines that the Equity Owners have standing to pursue the causes of action in the Complaint, there is no reason to believe that this state-law dispute between non-debtors will prolong or otherwise affect the administration of the EdgeMarc bankruptcy case.   *Sycamore Partners Mgmt.*, 2019 WL 3431107, at *8 (rejecting contention that the state court proceeding "might prolong the administration of the estate" where the defendant "provide[d] no basis for this assertion" and failed to "explain why proceeding in [the state court] as compared to this Court would prolong the administration" of the estate); *Fried*, 496 B.R. at 711 (status of bankruptcy proceeding and prolonging administration of estate prongs weighed in favor of remand where it was "doubtful that th[e] matter [would] have any significant effect on the timely administration and liquidation of the [debtor's] estate").   Energy Transfer has not offered any facts to the contrary.   These prongs likewise weigh in favor of abstention.

### B.     The possibility of procedural consolidation has no bearing on mandatory abstention.

Energy Transfer also argues that it "*may* be appropriate" for this action to be procedurally consolidated with Energy Transfer's action against EdgeMarc and that, as a result, abstention is not required.   Remand Opp. at 15-16 (emphasis added).   This argument is precluded by the language of 28 U.S.C. § 1334(c)(2), under which abstention is *mandatory* when specific elements are met — without regard for whether the action has been or could be consolidated with another action.

In support of its position, Energy Transfer cites one case, *In re Epi-Scan, Inc.*, 71 B.R. 975 (Bankr. D.N.J. 1987), in which the court *granted* a motion for discretionary abstention after

having noted — in a sentence of dicta — that mandatory abstention was not available because one of the consolidated actions (the post-petition action) was a core proceeding. *Id.* at 980. But even if the dicta in *In re Epi-Scan* had any relevance, it is inconsistent not only with the statutory language but also with subsequent binding precedent. In *Hall* v. *Hall*, the Supreme Court held that procedural consolidation cannot affect substantive rights. 138 S. Ct. 1118, 1130 (2018) ("[M]erger is never so complete in consolidation as to deprive any party of any substantial rights which he may have possessed had the actions proceeded separately."). It is, moreover, indisputable that neither Bankruptcy Rule 7042, nor any other Rule of Civil Procedure, can abrogate any substantive right, *see* 28 U.S.C. § 2075, which is precisely what would occur if a procedural consolidation could impair or affect a party's statutory right to mandatory abstention, *see, e.g.*, *Miller* v. *Santilli*, 2007 WL 839981, at *2 (E.D. Pa. Mar. 15, 2007) (plaintiff has "right to abstention" where § 1334(c)(2) requirements are met); *In re Drauschak*, 481 B.R. 330, 351 (Bankr. E.D. Pa. 2012) (plaintiff has "rights under sections 1334(c) and 1452(b) to have [an] adversary proceeding returned to the state court").

## <u>CONCLUSION</u>

For the foregoing reasons, the Equity Owners respectfully request that this Court abstain from adjudicating this action and remand the action to the New York court to adjudicate the merits of their causes of action against Energy Transfer, including those aspects of the motion to dismiss that do not relate to the Equity Owners' standing to pursue the causes of action at issue.

-11-

Dated:  August 23, 2019

Respectfully submitted,

/s/ Patrick A. Jackson
Emil A. Kleinhaus (*pro hac vice*)
Carrie M. Reilly (*pro hac vice*)
S. Christopher Szczerban (*pro hac vice*)
Corey J. Banks (*pro hac vice*)
Michael H. Cassel (*pro hac vice*)
WACHTELL, LIPTON, ROSEN & KATZ
51 West 52nd Street
New York, New York  10019
Telephone:  (212) 403-1000
Facsimile:  (212) 403-2000
EAKleinhaus@wlrk.com
CMReilly@wlrk.com
SCSzczerban@wlrk.com
CJBanks@wlrk.com
MHCassel@wlrk.com

Patrick A. Jackson (Del. Bar No. 4976)
DRINKER BIDDLE & REATH LLP
222 Delaware Avenue, Suite 1410
Wilmington, Delaware  19801-1621
Telephone:  (302) 467-4200
Facsimile:  (302) 467-4201
Patrick.Jackson@dbr.com

*Attorneys for Plaintiffs GSCP VI*
*EdgeMarc Holdings, L.L.C., GSCP VI*
*Parallel EdgeMarc Holdings, L.L.C.,*
*WSEP and Bridge 2012 EdgeMarc*
*Holdings, L.L.C., and EM Holdco LLC*